**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **DANIELLE READO** | * | **CIVIL ACTION NO. _____** |
| | * | |
| | * | |
| **VERSUS** | * | |
| | * | **JUDGE _____** |
| | * | |
| **CITY OF NEW ORLEANS AND** | * | |
| **SERPIL PROPERTIES LLC** | * | **MAGISTRATE _____** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

**NOW INTO COURT,** through undersigned counsel, comes Danielle Reado who alleges as follows:

## NATURE OF ACTION

1.

This is an action by Danielle Reado ("Reado") to annul the alleged sale of her home by the City of New Orleans ("City") to Serpil Properties LLC ("Serpil") because the alleged sale failed to comply with the due process clause of the United States Constitution, it constituted an excessive fine and/or punishment which is prohibited by the Eight Amendment of the United States Constitution, and because the sale was made in contravention of several other Louisiana statutes. In the alternative, and only in the event that this Court finds that the City's sale of Plaintiff's home to Serpil was proper, Reado seeks just compensation for the taking of the equity in her home, as is required by the Fifth Amendment of the United States Constitution. Additionally, Plaintiff seeks a declaration from this Court that several provisions of Louisiana law related to the City's sale of her home to Serpil, and its theft of the equity therein, are unconstitutional under the United States Constitution.

1

## THE PARTIES

2.

Plaintiff, Danielle Reado, is an adult resident of New Orleans, Orleans Parish, Louisiana.

3.

Defendant, the City of New Orleans, is a political subdivision of the State of Louisiana and a municipal corporation organized under the laws of the State of Louisiana and the Home Rule Charter of the City of New Orleans, subject to the jurisdiction and venue of this Court. At all times relevant hereto the City acted within the scope of its authority as a municipality chartered under the laws of the State of Louisiana.

4.

Defendant, Serpil Properties LLC, is a Louisiana Limited Liability Company having a principal business establishment in Orleans Parish, Louisiana.

## JURISDICTION AND VENUE

5.

Plaintiff brings this action under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, 28 U.S.C. § 2201, and various provisions of state law.

6.

The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question).

7.

The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 42 U.S.C. § 1367.

8.

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because both defendants are residents in this District and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**FACTUAL ALLEGATIONS**

9.

This action concerns actions and inactions by the City and Serpil in relation to a piece of immovable property located at 4715 Laine Avenue in New Orleans, Louisiana (the "Property"), which is further described as:

> TWO CERTAIN LOTS OF GROUND, situated in the THIRD DISTRICT of the City of New Orleans, State of Louisiana, in SQUARE NO. 6, BLUM-ANTOINE, which square is bounded by LAINE AVENUE, LEEDS, and HAMMOND STREETS, and THE EAST PROPERTY LINE OF THE SUBDIVISION, said lots are designated as LOT NOS. 19 and 20, adjoin and measure each 25 feet front on Laine Avenue, same in width in the rear, by a depth of 141.83 feet between equal and parallel lines. Said Lot No. 20 is located nearer to and commences at a distance of 150 feet from the corner of Laine Avenue and Leeds Street.

> All as shown on a survey made by Gilbert, Kelly & Couturie, Inc., Surveyors, dated June 27, 1979 annexed to a prior act and being the same property acquired in NA No. 2021-40778, CIN No. 699890, NA No. 2021-38946, CIN No. 699417, COB 762/256, and COB 557/265.

10.

On September 25, 2012, the City, through its Director of Finance and ex-officio Tax Collector ("Tax Collector"), purportedly placed the Property into a tax sale for an ad valorem tax delinquency of $2,075.38, and after purportedly receiving no bids on the Property at said tax sale,

3

said Tax Collector purportedly transferred tax sale title for the Property to the City. These purported acts are evidenced by a document entitled "Tax Sale Certificate" which is dated May 18, 2016, and which was recorded on May 23, 2016 in the Orleans Parish Conveyance records as Instrument No. 2016-20705, CIN No. 599326 ("Tax Sale").

11.

At the time of the Tax Sale, the Property was owned by plaintiff's mother, Gwendolyn Reado, who acquired full title to the Property via a Final Decree of Divorce from Taylor Reado, Jr. issued by the 27th Judicial District Court of Harris County, Texas in case No. 91-05058 on May 8, 1991.

12.

On or about October 1, 2021, Plaintiff acquired ownership of the Property from her mother via a Quit Claim Deed that was recorded in the Conveyance records for the Parish of Orleans, State of Louisiana as Instrument No. 2021-40778, CIN No. 699890.

13.

Neither Plaintiff nor her mother, Gwendolyn Reado, ever received any notice from the City or anyone else about the Tax Sale and, on information and belief, none of these parties or anyone acting on their behalf ever sent notice to Plaintiff or her mother about the Tax Sale either before or after its occurrence. If it is shown that notices relating to the Tax Sale were sent to Plaintiff or her mother, Plaintiff avers, on information and belief, that the notices were not sent to Plaintiff or her mother within the time periods specified by law, failed to contain the information that the law required them to contain, and failed to provide sufficient notice of the Tax Sale to Plaintiff and/or her mother.

14.

On January 20, 2023, the City purported to sell the Property to Serpil for $60,753.75 via a Non-Warranty Cash Sale that was recorded on January 24, 2023 in the Orleans Parish Conveyance records as Instrument No. 2023-02649, CIN No. 722806 ("Adjudication Sale").

15.

While the instrument evidencing the Adjudication Sale does not indicate under what authority the City purported to sell Plaintiff's Property to Serpil, Plaintiff has learned from Serpil that Serpil purportedly purchased the Property from the City via an online auction on the website Civicsource.com.

16.

Civicsource.com is the venue in which the City, through an agent, sells immovable property that has been adjudicated to the City to third parties, such as Serpil.

17.

Civicsource.com contains a page that indicates that the Property was "bundled" with another piece of immovable property and placed into an online auction on January 4, 2023, at which the winning bid was $121,800.00.[1] Plaintiff avers that discovery will show that this online auction is the one at which the Adjudication Sale was made.

18.

Plaintiff never received any notice from the City, Serpil, or anyone else about the Adjudication Sale and, on information and belief, none of these parties or anyone acting on their

---

[1] See https://www.civicsource.com/auctions/cno/150145

behalf ever sent notice to Plaintiff about the Adjudication Sale either before or after its occurrence. If it is shown that any notices relating to the Adjudication Sale were sent to Plaintiff, Plaintiff avers, on information and belief, that the notices were not sent to Plaintiff within the time periods specified by law, failed to contain the information that the law required them to contain, and failed to provide sufficient notice of the Adjudication Sale to Plaintiff.

19.

At the time of the Adjudication Sale, the fair market value of the Property was between $99,300.00 and $178,000.00.

20.

At the time of the Adjudication Sale, the City's tax bill on the Property indicates that $27,883.53 in taxes, interest, costs, and fees were due.

21.

Both the sale price of the Property at the Adjudication Sale and the fair market value of the Property were higher than the tax debt owed to the City at the time of the Adjudication Sale. The difference between the fair market value/ sale price and the tax debt owed to the City on the Property at the time of the Adjudication Sale constituted Plaintiff's equity in the Property.

22.

Despite significant equity existing in the Property at the time of the Adjudication Sale, neither the City nor Serpil has paid Plaintiff any amount in compensation associated with the Adjudication Sale.

23.

As a result of the Adjudication Sale, Serpil claims that it is now the owner of the Property.

## CAUSES OF ACTION AND DAMAGES

### 24.

To the extent that the legal or factual bases of the causes of action asserted herein are inconsistent with, or mutually exclusive of, one another they are set forth in the alternative as allowed by FRCP Rule 8(a)(3) and 8(d)(3).

## A.   NULLITY FOR DUE PROCESS VIOLATION

### 25.

Plaintiff realleges and re-avers the allegations contained in the preceding paragraphs above, as if restated herein.

### 26.

Plaintiff is entitled to have the Serpil Land Tax Sale set aside and annulled under the Fourteenth Amendment of the United States Constitution because notice sufficient to satisfy due process was not provided to Plaintiff.

### 27.

In Mennonite Board of Missions v. Adams, the Supreme Court recognized that the sale of property for nonpayment of taxes is an action affecting a property right that is protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution. 462 U.S. 791 (1983).

### 28.

Under the Due Process Clause of the Fourteenth Amendment "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well

versed in commercial practice, if its name and address are reasonably ascertainable." Mennonite Board of Missions v. Adams, 462 U.S. 791 (1983)

29.

Plaintiff's mother never received any notices related to the Tax Sale while she was the owner of the Property and Plaintiff never received any notices related to either the Tax Sale or the Adjudication Sale either before or after she became the owner of the Property. On information and belief, neither the City nor Serpil ever sent any notices related to the Tax Sale or the Adjudication Sale to Plaintiff, or Plaintiff's mother when she owned the Property. Even if it is shown that notices relating to the Tax Sale or the Adjudication Sale were sent to Plaintiff, or Plaintiff's mother when she owned the Property, which is denied, the notices were insufficient to provide due process notice about the sales.

30.

For these reasons, both the Tax Sale and the Adjudication Sale violated Plaintiff's due process rights under the Fourteenth Amendment of the United States Constitution and Plaintiff is entitled to have the Tax Sale and the Adjudication Sale declared null and void and set aside and annulled.

31.

The same failure of the City and/or Serpil to provide notice related to the Tax Sale and the Adjudication Sale also entitles Plaintiff to have the Tax Sale and the Adjudication Sale set aside as a "redemption nullity" under Louisiana state law.

## B.   NULLITY UNDER THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION

32.

Plaintiff realleges and re-avers the allegations contained in the preceding paragraphs above, as if restated herein.

33.

If this Court finds that notice meeting the requirements of due process of law under the Fourteenth Amendment of the United States Constitution was provided to Plaintiff for the Tax Sale and Adjudications Sale, which is denied, the Adjudication Sale should be annulled because the amount of equity in Plaintiff's Property that will have been taken from her is so great that it constitutes the imposition of an excessive fine and/or infliction of cruel and unusual punishment for Plaintiff's tax delinquencies.

34.

The Eighth Amendment of the United States Constitution provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

35.

La. R.S. 47:2121 *et seq*, the statutory scheme under which both the Tax Sale and the Adjudication Sale were made, allows a governmental taxing authority to initiate a process that ultimately results in the transfer of private property from a tax debtor to a third party without taking into consideration the value of the private property that is transferred or the tax debt that is owed. This blindness means that a delinquent taxpayer will lose a significant amount of equity in his/her property upon failing to remedy the situation in a timely manner as long as the property is worth more than the delinquent tax obligation. The only conceivable reason for La. R.S. 47:2121 *et seq*

to work in this manner is to incentivize tax debtors to make timely tax payments by harshly punishing them with the loss of their property and the equity existing therein if they fail to do so.

36.

The Adjudication Sale was designed to punish Plaintiff for failing to pay the $27,883.53 in delinquent taxes that were due at the time by causing her to lose a property that is worth between $99,300.00 and $178,000.00. Plaintiff did not receive any compensation from the sale of her Property other than, presumably, a discharge of the $27,883.53 delinquent tax obligation that was due. Instead, the City kept the funds generated from the Adjudication Sale over and above the amount of taxes that were due, which amounted to $32,870.22 or more[2]. The City's retention of these proceeds amounts to an excessive fine, or a cruel and unusual punishment. As such, Plaintiff is entitled to receive damages against the City or to have the Adjudication Sale annulled and set aside.

## C.   NULLITY UNDER ARTICLE I, SECTION 4 OF THE LOUISIANA CONSTITUTION

37.

Plaintiff realleges and re-avers the allegations contained in the preceding paragraphs above, as if restated herein.

---

[2] The $32,870.22 figure is what would be left if the $27,883.53 in taxes are deducted from the $60,753.75 sale price that is listed in the instrument describing the City's sale to Serpil. Since the Adjudication Sale actually generated a winning bid of $121,800.00, there is no reasonable basis for the listed $60,753.75 sale price and Plaintiff contends that the sum retained by the City was much higher.

38.

The Adjudication Sale should be annulled because it violated a provision contained in the Louisiana Constitution prohibiting the City from taking property from one private person or entity and transferring it to another private person or entity.

39.

Article I, Section 4(B)(1) of the Louisiana Constitution provides that "Except as specifically authorized by Article VI, Section 21 of this Constitution property shall not be taken or damaged by the state or its political subdivisions: (a) for predominant use by any private person or entity; or (b) for transfer of ownership to any private person or entity."

40.

None of the exceptions contained in Article VI, Section 21 of the Louisiana Constitution apply to the Adjudication Sale because it was not made for the purpose of encouraging industrial relocation or expansion, establishing or furnishing industrial plants, operating a public port, or in relation to a pollution control facility.

41.

Article I, Section 4(B)(1) of the Louisiana Constitution constitutes a "rule of public order" that renders a contract, such as the act of sale to Serpil, an absolutely nullity under La. C.C. art. 2030 when violated.

42.

The Adjudication Sale purports to take ownership of Plaintiff's Property and transfer it to Serpil. Both Plaintiff and Serpil are private persons/ entities. Accordingly, the Adjudication Sale was prohibited by Article I, Section 4(B)(1) of the Louisiana Constitution and should be set aside as an absolute nullity.

11

### D.   RESCISSION OF TAX SALE FOR
### LESION BEYOND MOIETY

43.

Plaintiff realleges and re-avers the allegations contained in the preceding paragraphs above, as if restated herein.

44.

If this Court finds that Serpil has acquired ownership of Plaintiff's Property through the Adjudication Sale, which is denied, then Plaintiff is entitled to have the Adjudication Sale rescinded under La. C.C. art. 2589.

45.

La. C.C. art. 2589 provides that "The sale of an immovable may be rescinded for lesion when the price is less than one half of the fair market value of the immovable."

46.

The fair market value of Plaintiff's Property at the time of the Adjudication Sale was between $99,300.00 and $178,000.00. The act evidencing the Adjudication Sale indicates that the sale price was $60,753.75. If this Court determines that Serpil has acquired full ownership of Plaintiff's Property through the Adjudication Sale, which is denied, and that the fair market value of the Property at the time of the Adjudication Sale is determined to have been more than $121,507.50, then the price that Serpil will have paid for the Property will be less than one half of its fair market value and Plaintiff is entitled to have the sale rescinded for lesion.

12

### E.    JUST COMPENSATION UNDERTHE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION

47.

Plaintiff realleges and re-avers the allegations contained in the preceding paragraphs above, as if restated herein.

48.

If this Court finds that Serpil has acquired ownership of Plaintiff's Property through the Adjudication Sale, which is denied, Plaintiff is entitled to receive just compensation from the City or Serpil for the taking of her Property.

49.

The Fifth Amendment of the United States Constitution requires the payment of "just compensation" to the property's former owner by a governmental entity that has taken private property for public purposes.

50.

La. R.S. 47:2121 *et seq* allows a governmental taxing authority such as the City to take private property from one private person and give it to another private person in order to recoup tax delinquencies that exist on immovable properties within their jurisdiction. For property that has been adjudicated to the taxing authority because there were no bidders at an initial tax sale, the taxing authority has several options, one of which is to auction ownership of the property off to the highest bidder at a public sale. When the taxing authority sells a tax debtor's property in this manner, La. R.S. 47:2211 dictates how the proceeds from the sale are distributed. According to La. R.S. 47:2211 "any amount in excess of the costs, statutory impositions, and governmental liens shall be paid to the selling political subdivision."

13

51.

In Tyler v. Hennepin Cnty., the United States Supreme Court recently determined, in a unanimous decision, that a person's equity in a piece of property is a property right that is protected by the Constitution's takings clause when the government sells the property to a third party for delinquent taxes. 143 S.Ct. 1369 (2023). In other words, a local government can sell a tax debtor's property to satisfy the tax debt, but just compensation must be paid for the value of the property that was taken above and beyond the amount of the tax debt.

52.

La. R.S. 47:2211's mandate that "any amount [generated from the sale of a tax debtor's property] in excess of the costs, statutory impositions, and governmental liens shall be paid to the selling political subdivision" is in direct conflict with the Supreme Court's holdings in Tyler v. Hennepin Cnty.

53.

In this case, Plaintiff's Property was purportedly adjudicated to the City for tax delinquencies that existed long before she became the owner of it. The City then "bundled" the Property with another piece of property and placed both of them into an auction to recoup the tax delinquencies. At the time of the auction, the tax delinquency on the Property was $27,883.53 and the Property had a fair market value between $99,300.00 and $178,000.00. The winning bid at the auction was $121,800.00. Sixteen days after the auction, an instrument indicating that the Property was sold to Serpil was recorded in the Orleans Parish Conveyance records. Said instrument arbitrarily and capriciously listed the sale price as $60,753.75. The fair market value, the winning bid amount, and the arbitrary and capricious sale price that was listed on the instrument evidencing the sale were all in excess of the tax debt that Plaintiff owed on the Property at the time of the

purported sale. Plaintiff has never been compensated in any amount by the City, Serpil, or anyone else in relation to the City's purported sale of the Property to Serpil.

54.

If this Court finds that Serpil has acquired ownership of Plaintiff's Property through the Adjudication Sale, which is denied, Plaintiff is entitled to receive just compensation pursuant to the Fifth Amendment of the United States Constitution from the City and/ or Serpil for the equity in the Property over and above the amount of the taxes that were due at the time of the Adjudication Sale.

**F.    DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201**

55.

Plaintiff realleges and re-avers the allegations contained in the preceding paragraphs above, as if restated herein.

56.

An actual controversy exists between Plaintiff and the City regarding the constitutionality and legal enforceability of La. R.S. 47:2201 to 47:2230.

57.

Plaintiff is entitled to a declaration of her rights with regard to La. R.S. 47:2201 to 47:2230.

58.

Plaintiff is entitled to a declaration that provisions of La. R.S. 47:2201 to 47:2230 which allow Louisiana tax collectors to avoid the payment of just compensation to owners of private property who have had equity taken from them when their property is sold to satisfy delinquent tax obligations are null and void as a violation of the Fifth Amendment of the United States Constitution.

15

59.

An actual controversy exists between Plaintiff and the City regarding the constitutionality and legal enforceability of Louisiana Constitution Art. XII, § 10 (c).

60.

Plaintiff is entitled to a declaration of her rights with regard to Louisiana Constitution Art. XII, § 10 (c).

61.

Plaintiff is entitled to a declaration that provisions of Louisiana Constitution Art. XII, § 10 (c) which allow Louisiana tax collectors to avoid the payment of just compensation to owners of private property who have had equity taken from them when their property is sold to satisfy delinquent tax obligations are null and void as a violation of the Fifth Amendment of the United States Constitution and the Supremacy Clause of the United States Constitution (Article VI, Paragraph 2).

**JURY DEMAND**

62.

Plaintiff is entitled to and requests a trial by jury.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff, Danielle Reado, prays that after due proceedings are had, including a trial by jury, there be:

(a) A judgment rendered in favor of Plaintiff and against the City of New Orleans and Serpil Properties LLC declaring that the Tax Sale and the Adjudication Sale are null and void and/or rescinded and recognizing that Plaintiff retains all rights that she has in/to the Property;

16

(b) In the alternative, and only in the event that this Court finds that Serpil has acquired ownership of Plaintiff's Property through the Adjudication Sale, a judgment rendered in favor of Plaintiff and against the City of New Orleans and/or Serpil Properties LLC for the just compensation due to Plaintiff under the takings clause of the United States Constitution;

(c) A declaratory judgment that provisions of La. R.S. 47:2201 to 47:2230 and Louisiana Constitution Art. XII, § 10 (c) which allow Louisiana tax collectors to avoid the payment of just compensation to owners of private property who have had equity taken from them when their property is sold to satisfy delinquent tax obligations are unconstitutional under the Fifth Amendment and Article VI, Paragraph 2 (the Supremacy Clause) of the United States Constitution;

(d) A judgment awarding actual reasonable attorney fees and litigation expenses pursuant to 42 U.S.C. § 1988 and all other applicable laws, rules, or statutes; and

(e) A judgment granting Plaintiff any and all general, legal, and equitable relief to which she may be entitled.

Respectfully submitted,

**PRITCHETT LEGAL SERVICES, LLC**

<u>/s/ Paul W. Pritchett</u>
**PAUL W. PRITCHETT (#36926)**
2930 Banks Street
New Orleans, Louisiana 70119
Telephone: 602-402-6264
Email: ppritchett@pritchettlegal.com
***Attorney for Plaintiff, Danielle Reado***

17