**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **DANIELLE READO** | * | **CIVIL ACTION NO. 2:24-cv-2451-SSV-** |
| | * | **JVM** |
| | * | |
| **VERSUS** | * | |
| | * | **JUDGE SARAH S. VANCE** |
| | * | |
| **CITY OF NEW ORLEANS AND** | * | |
| **SERPIL PROPERTIES LLC** | * | **MAGISTRATE JANIS VAN** |
| | * | **MEERVELD** |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN OPPOSITION TO**
**DEFENDANT CITY OF NEW ORLEANS'**
**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiff, Danielle Reado submits this Memorandum in Opposition to the City of New Orleans' ("City") Motion to Dismiss First Amended Complaint (R. Doc. 25) ("Motion to Dismiss"). This Court should deny the City's entire request for a dismissal for the reasons detailed below.

**LAW AND ARUGMENT**

**A.    Danielle Reado Has a Right to Seek Annulment of the Tax Sale Notwithstanding Her Post-Sale Acquisition of the Property**

The City's contention that Danielle Reado has no right to seek annulment of the Tax Sale because she did not own the Property at the time of the sale is contrary to established law. While Danielle did not own the property at the time, Louisiana jurisprudence and statutory authority make clear that defects in a tax sale—including constitutional violations—follow the property, not the person.

It is well established that property interests are not created by the U.S. Constitution but are instead defined by independent sources such as state law. See Board of Regents v. Roth, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution. Rather, they

1

are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."). Accordingly, when assessing the existence and scope of a property interest protected by the Due Process Clause, courts must look to state law to determine the contours of that interest.

Louisiana law confirms that certain rights and obligations concerning real property, including those arising out of tax sales, attach to the property itself and pass to subsequent owners. In Mooring Tax Asset Grp., L.L.C. v. James, the Louisiana Supreme Court confirmed that the property's current owner is the proper party to seek annulment of a tax sale based on lack of notice to a prior owner. 156 So. 3d 1143 (La. 2014) ("it is undisputed that the [prior owners] did not receive constitutionally sufficient notice and thus the tax sale was properly declared absolutely null." Id. at 1147.) The Mooring Court reached this conclusion by examining the rights that were conveyed in the property's title documents and the "*in rem* nature of the obligation imposed by ad valorem real estate taxes." Id. at 1150-51. Recitations in the title documents meant that "it was [the current owner] who properly sought to annul the tax sale even though he was not the tax debtor or property owner at the time of the tax sale." Id. at 1151. Likewise, "the in rem nature of the obligation imposed by ad valorem real estate taxes" meant that the rights and obligations concerning the tax sale (including the right to have it annulled) followed the property, not its former owners:

> "This court has long recognized that 'taxes levied on real property are a charge laid exclusively upon the property assessed, and collectible only out of said property, and neither the owner of said property, nor any other property of his, is liable for said taxes.' Such taxes serve as a lien upon the specific piece of real estate. Moreover, this court has held that collection of delinquent real estate taxes can only be collected by tax sale of the property, not a personal suit against the property owner. **Because immovable property taxes are exclusively a charge upon the property assessed and collectable only from tax sale of that property, it is clear that any obligation relative to those taxes did not follow the Browns once they sold the property. Thus, the obligation to clear the tax sale deed from the title**

**to the property, which we now hold cannot be accomplished without paying the tax purchaser's costs, necessarily belongs to the current owner of the property**." Id. (emphasis added).

Thus, under **either** consideration, the current owner of the property held all of the rights and obligations vis a vis a tax sale that had occurred prior to his purchase of the property. Id.

This principle squarely applies here. Danielle Reado's First Amended Complaint seeks to annul the Tax Sale for lack of due process because neither she nor her predecessor in title were notified about the Tax Sale.[1] Under Mooring, defects in a tax sale (including constitutional defects) follow the property, which means that it is irrelevant that Danielle Reado did not own the Property at the time of the Tax Sale that she is challenging. The City's claim that Danielle Reado has no right to challenge the Tax Sale because it occurred prior to her acquisition of an interest in the Property has no merit and should be rejected by this Court.

Furthermore, Louisiana law recognizes that "[a]bsolute nullity may be invoked by any person or may be declared by the court on its own initiative." La. C.C. Art. 2030. The Louisiana Supreme Court has determined that Fourteenth Amendment due process violations results in Louisiana tax sales being "null and void in its entirety." Smitko v. Gulf S. Shrimp, Inc., 94 So. 3d 750, 759 (La. 2012); See also Sutter v. Dane, 985 So. 2d 1263, 1268 (La. 4th Cir. 2008) (finding that La. C.C. Art. 2030 was the basis for nullification of tax sales for lack of due process notice). Because Danielle Reado is a person, she has a right to raise a claim that the Tax Sale is an absolute nullity for want of due process notice under La. C.C. Art. 2030. This is exactly what her First Amended Complaint does which means that the City's claim that she does not have a right to challenge the Tax Sale must be rejected.

---

[1] Danielle Reado's First Amended Complaint, R. 20, ¶¶ 25 to 30.

The City makes several arguments in its attempt to overcome the clear mandates of Louisiana law that defects in a tax sale follow the property and that Louisiana tax sales that violate due process are absolute nullities that can be raised by anyone. The first of these is the City's claim that Smitko v. Gulf S. Shrimp, Inc. 77 So. 3d 1012 (La. 1st Cir. 2011) is the controlling precedent in this matter. This assertion is misplaced for multiple reasons. First, the issue that Smitko addressed is not the same as the issue that is present here. In Smitko, the defendants asserted that a tax sale was "invalid due to lack of notice to other lienholders." Id. at 1024. The appellate court rejected this argument, finding that the defendants had "standing to challenge the notice that they each received respectively, but they have no standing to challenge the lack of notice to other mortgagors or lienholders." Id. This question is entirely different from the one that is present in this matter, whether a current owner may challenge a lack of notice to a predecessor in title, a question that was squarely and affirmatively answered by the Louisiana Supreme Court in Mooring.

Second, the Smitko case that the City relies on was reversed by the Louisiana Supreme Court in Smitko v. Gulf S. Shrimp, Inc., 94 So. 3d 750, 759-760 (La. 2012). The reversal was based on a finding that "the former property owner has sufficiently established the Sheriff failed to provide notice of the tax delinquencies and the tax sales to the former property owner as required by due process of law." Id. Because the reversal was based on the lack of notice to a party that was present in the case, the Louisiana Supreme Court had no need to, and did not, affirm the lower court's discussion of standing as to other mortgagors or lienholders. Accordingly, the Louisiana First Circuit's analysis on that point in Smitko is nothing more than nonbinding dicta.

Finally, even if the City's interpretation of Smitko were correct, it would still be superseded by Mooring, because Morring is a decision of a higher court (the Louisiana Supreme Court) and it

is a more recent decision than <u>Smitko</u>. <u>Mooring</u> clearly confirms that tax sale defects follow the property, and that a current owner has a right to raise challenges related to notice deficiencies suffered by a predecessor in title. 156 So. 3d 1143, 1150–51 (La. 2014).

In sum, <u>Smitko</u> simply doesn't apply here. It is legally and factually distinct from this case, was reversed by the Louisiana Supreme Court, and was superseded by <u>Mooring</u>. This Court should disregard the City's reliance on Smitko and deny its attempt to use it as a basis to defeat Danielle Reado's claims.

In its second argument, the City claims that <u>Mooring</u> is inapplicable to this case because the title documents in that case contained language conveying the prior owner's right to challenge the tax sale, whereas Danielle Reado's title documents purportedly do not. The City's effort to distinguish <u>Mooring</u> is unavailing because it ignores the fact that the Louisiana Supreme Court provided two independent and equally dispositive rationale for its decision in <u>Mooring</u>. The rationale that the City's argument ignores has nothing to do with language contained in the title documents and finds that "the in rem nature of the obligation imposed by ad valorem real estate taxes" means that the rights and obligations concerning a tax sale (including the right to have it annulled) followed the property, not its former owners:

> "This court has long recognized that 'taxes levied on real property are a charge laid exclusively upon the property assessed, and collectible only out of said property, and neither the owner of said property, nor any other property of his, is liable for said taxes.' Such taxes serve as a lien upon the specific piece of real estate. Moreover, this court has held that collection of delinquent real estate taxes can only be collected by tax sale of the property, not a personal suit against the property owner. **Because immovable property taxes are exclusively a charge upon the property assessed and collectable only from tax sale of that property, it is clear that any obligation relative to those taxes did not follow the Browns once they sold the property. Thus, the obligation to clear the tax sale deed from the title to the property, which we now hold cannot be accomplished without paying the tax purchaser's costs, necessarily belongs to the current owner of the property**." 156 So. 3d 1143, 1150–51 (La. 2014). (emphasis added).

Thus, under <u>Mooring</u>, the current property owner retains the right to seek annulment of a defective tax sale even absent an express assignment of rights in the chain of title.

Finally, the City argues that Danielle Reado cannot, as a matter of law, seek to annul the Tax Sale because she acquired the Property with constructive knowledge of the recorded tax sale acquired via the public records doctrine. The City cites no legal authority to support this claim, and binding precedent contradicts it. In <u>Mooring</u>, the tax sale at issue had also been recorded at the time of the property's purchase. <u>Id</u>. at 1145. Despite this fact, the Louisiana Supreme Court held that it was proper for the subsequent purchaser to seek annulment of the tax sale for notice defects that it contained. <u>Id</u>. at 1147. Thus, the existence of a recorded tax sale does not bar a subsequent purchaser from seeking to annul a tax sale based on defective notice to his or her predecessor in title, and it does not bar Danielle Reado's claim here.

In summary, the City's argument that Danielle Reado does not have a right to annul the Tax Sale based on defective notice to her predecessor in title ignores both Louisiana black letter law and Louisiana Supreme Court precedence on the matter. <u>Mooring</u> makes it abundantly clear that defects in a tax sale follow the property, not the person, and may be raised by a property's current owner. Moreover, La. C.C. Art. 2030 provides that absolute nullity of an act, such as a tax sale conducted without constitutionally required notice, may be invoked by any person or even declared by the court on its own initiative. These interests, as part of Louisiana property law, are fully applicable to the consideration of Danielle Reado's due process rights that are under consideration by this Court. See <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577 (1972). Danielle Reado, as the current property owner, is plainly entitled to assert her nullity action under both <u>Mooring</u> and La. C.C. Art. 2030. The City's reliance on <u>Smitko</u> is misplaced, as that case involved a different issue, was reversed on other grounds, and has since been superseded by <u>Mooring</u>. The

City's claim that recordation of the Tax Sale in the public records bars Danielle Reado's claim is also plainly refuted by <u>Mooring</u>. Because Louisiana property law clearly supports her right to challenge the Tax Sale, the City's attempt to dismiss her claim must be rejected.

**B.    Danielle Reado Has a Right to Assert a Redemption Nullity Under Louisiana Law, and the City's Arguments to the Contrary Are Without Merit**

The City's contention that Danielle Reado cannot seek annulment of the Tax Sale as a redemption nullity under Louisiana state law[2] is also inconsistent with both Louisiana jurisprudence and statutory law.

First, the City argues that Danielle Reado as no right to challenge the Tax Sale under Louisiana law because she was not the party to whom the notice was required to be sent, relying again on the appellate court's decision in <u>Smitko v. Gulf South Shrimp, Inc.</u> 77 So. 3d 1012 (La. 1st Cir. 2011). As previously discussed, this argument fails. The Louisiana Supreme Court's subsequent decision in <u>Mooring Tax Asset Group, L.L.C. v. James</u> controls. 156 So. 3d 1143 (La. 2014). <u>Mooring</u> unequivocally establishes that a current property owner may seek annulment of a tax sale that occurred while the property was owned by his predecessor in title because defects in the tax sale follow the property, not the person. There is no need to rehash the full analysis here; suffice it to say that <u>Mooring</u> renders the City's argument unavailing.

The City's second argument, that Danielle Reado's claim fails because her First Amended Complaint demonstrates that she had constructive notice of the Tax Sale more than six months before the termination of the redemptive period, is also incorrect. A "[r]edemption nullity [is] the right of a person to annul a tax sale in accordance with R.S. 47:2286 because he was not duly notified at least six months before the termination of the redemptive period." La. R.S. 47:2122(10). A person is "duly notified" when "an effort meeting the requirements of due process of law has

---

[2] See Danielle Reado's First Amended Complaint, R. 20, ¶¶ 25 to 31 for her state law "redemption nullity" claim.

been made to identify and to provide that person with a notice that meets the requirements of R.S. 47:2156, 2157, 2206, 2236, or 2275, or with service of a petition and citation in accordance with R.S. 47:2266. . ." La. R.S. 47:2122(4). None of the statutes that are listed in the definition of "duly notified" permit constructive notice via recordation. See La. R.S. 47:2156, 2157, 2206, 2236, 2275, and 2266. To the contrary, they all require that actual mailed notice or formal service be made on the individual that is being "duly notified." Id.

Furthermore, a person can only be "duly notified" when "an effort meeting the requirements of due process of law has been made." La. R.S. 47:2122(4). The notion that due process notice can be achieved by recording a tax sale document in the conveyance records is at odds with the United States Supreme Court's holding in Mennonite Board of Missions v. Adams, that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party. . . if its name and address are reasonably ascertainable." 462 U.S. 791, 800 (1983). The City is not claiming that Danielle Reado or her mother's name and address were not reasonably ascertainable, which means that "[n]otice by mail or other means as certain to ensure actual notice" was necessary to make "an effort meeting the requirements of due process of law" under La. R.S. 47:2122(4). Recordation of a document in the conveyance records is certainly not "notice by mail" nor is it "notice. . . by other means as certain to ensure actual notice." To the contrary, it is similar to the publication of notices in the newspaper, which was a technique that the Supreme Court rejected as providing constitutionally sufficient notice. Id. at 795. (finding that it had previously "explained that notice by publication was not reasonably calculated to provide actual notice of the pending proceeding and was therefore inadequate to inform those who could be notified by more effective means such as personal service or mailed notice.").

The City's argument that Danielle Reado cannot seek annulment of the Tax Sale as a redemption nullity is contrary to both Louisiana statutory law and controlling precedent. As confirmed by the Louisiana Supreme Court in <u>Mooring</u>, defects in a tax sale follow the property, not the person, meaning a current owner has a right to challenge defects in a tax sale that occurred before he or she acquired an interest in the property. The City's reliance on constructive notice via recordation is also misplaced because Louisiana statutory law requires actual mailed notice or formal service, not merely placing documents in public records. Furthermore, the "duly notified" requirement is only satisfied under Louisiana statutory law by efforts that meet due process standards and the U.S. Supreme Court expressly found in <u>Mennonite</u> that constructive notices similar to the recordation of documents in the public records failed to meet due process standards. Because Danielle Reado's First Amended Complaint factually asserts that neither she nor her predecessor in title was "duly notified" of the Tax Sale as required by law,[3] her redemption nullity claim is viable and should be allowed to proceed.

**C.    Danielle Reado's First Amended Complaint Plausibly Alleges That the City's Retention of Surplus Proceeds From the Adjudication Sale Constitutes a Punishment Subject to the Eighth Amendment's Excessive Fines Clause**

The City asserts that Danielle Reado's Eighth Amendment claim[4] should be dismissed on the ground that her allegations do not describe a "punishment" within the meaning of the Eighth Amendment. This argument is flawed, and the City's request for dismissal should be denied.

---

[3] See Danielle Reado's First Amended Complaint, R. 20, ¶¶ 13 (stating "Neither Plaintiff nor her mother, Gwendolyn Reado, ever received any notice from the City or anyone else about the Tax Sale and, on information and belief, none of these parties or anyone acting on their behalf ever sent notice to Plaintiff or her mother about the Tax Sale either before or after its occurrence. If it is shown that notices relating to the Tax Sale were sent to Plaintiff or her mother, Plaintiff avers, on information and belief, that the notices were not sent to Plaintiff or her mother within the time periods specified by law, failed to contain the information that the law required them to contain, and failed to provide sufficient notice of the Tax Sale to Plaintiff and/or her mother.")

[4] See Danielle Reado's First Amended Complaint, R. 20, ¶¶ 32 to 36 for her Eighth Amendment excessive fine/ cruel and unusual punishment claim.

Louisiana law authorizes political subdivisions to sell immovable property adjudicated to them in order to recover unpaid property taxes. See La. R.S. 47:2196 et seq. Critically, La. R.S. 47:2211 provides that any surplus proceeds from such a sale, i.e., proceeds exceeding the tax debt, are retained by the political subdivision that conducted the sale. There is no reason for the political subdivision to retain the surplus funds that are generated as part of an adjudicated property sale other than to take from the property's former owner or to punish them for allowing the delinquency to occur.

In Tyler v. Hennepin Cnty., the United States Supreme Court held that the taking avenue is governed by the Fifth Amendment. 143 S. Ct. 1369, 1381 (2023). In the same case it declined to address the punishment issue under the Eighth Amendment because the plaintiff agreed that "relief under 'the Takings Clause would fully remedy [her] harm.'" Id. Nevertheless, Justice Gorsuch, joined by Justice Jackson, emphasized in concurrence that "[e]conomic penalties imposed to deter willful noncompliance with the law are fines by any other name" and admonished future courts to remember that "the Constitution has something to say about them: They cannot be excessive."[5] Id. at 1382.

The City contends that its retention of surplus proceeds from the Adjudication Sale was neither a punishment nor a taking. If it was neither of these things, then what was it? The City does not explain. There was no reason for the Louisiana legislature to have included the provision in La. R.S. 47:2211 that required the City to retain the surplus funds generated at adjudication sales

---

[5] While the City contends that Justice Gorsuch's concurrence is not binding precedent, none of the post Tyler cases that the City cites as coming to a different conclusion are binding precedent either. However, a concurrence by two sitting Justices of the United States Supreme Court is entitled to substantial persuasive weight, particularly when it draws directly from long-established Supreme Court principles as Justice Gorsuch's concurrence in Tyler does. Given the Court's unmistakable direction in Austin (see infra), Bajakajian (see infra), and Tyler, Justice Gorsuch's interpretation of what qualifies as "punishment" should carry significantly more weight than the out-of-circuit decisions that the City cites that interpret the same constitutional provision in a narrower fashion.

other than to encourage tax payments by subjecting a taxpayer to the possibility of a larger loss if he/ she refuses. In other words, the forfeiture of the surplus funds exists to "deter willful noncompliance" with Louisiana's ad valorem tax payment system. It is doubtful that the requirement was included to allow political subdivisions to take property without paying just compensation (aka, to steal it in violation of the Constitution). Even if the provision was included for multiple purposes, as long as one of those purposes is punitive, it would still fall under the purview of the Eighth Amendment. See Austin v. United States, 509 U.S. 602, 602 (1993).

Moreover, the City seemingly claims that the pocketing of surplus proceeds does not constitute punishment because it has no control over the amount that it will collect at an adjudicated property sale. Justice Gorsuch's concurrence in Tyler notes that the Supreme Court has never "held that a scheme producing fines that punishes some individuals can escape constitutional scrutiny merely because it does not punish others." Tyler v. Hennepin Cnty., 143 S. Ct. 1369, 1381 (2023). Thus, this consideration is irrelevant.

The scope of the Eighth Amendment is not static and its meaning must be drawn from the "evolving standards of decency that mark the progress of a maturing society." Trop v. Dulles, 356 U.S. 86, 100-1 (1958). In today's society, most would view a system that allows the government to sell someone's property to pay a debt and then keep the excess proceeds as fundamentally punitive. It is also almost certain that the Legislature included the provision in La. R.S. 47:2211 that required the City to retain the surplus funds to be punitive by deterring willful noncompliance with Louisiana's ad valorem tax payment system. See United States v. Bajakajian, 524 U.S. 321, 329 (1998) ("[d]eterrence. . . has traditionally been viewed as a goal of punishment"). Accordingly, Danielle Reado has plausibly alleged that the City's retention of surplus proceeds from the

Adjudication Sale constitutes a punishment under the Eighth Amendment. The City's motion to dismiss this claim should therefore be denied.

### D.     Application of <u>Tyler v. Hennepin County</u> Requires Denial of the City's Motion to Dismiss Danielle Reado's Fifth Amendment Claims

The City asserts that the United States Supreme Court's decision in <u>Tyler v. Hennepin Cnty</u> 143 S. Ct. 1369 (2023) is inapplicable to this case and that Danielle Reado, accordingly, "has no plausible claim to recover the 'equity' she allegedly had in the Property over and above her tax debt."[6] This argument is not only wrong, it is completely meritless.

The facts and question that were before the Supreme Court in <u>Tyler</u> are as follow:

> "Hennepin County, Minnesota, sold Geraldine Tyler's home for $40,000 to satisfy a $15,000 tax bill. Instead of returning the remaining $25,000, the County kept it for itself. The question presented is whether this constituted a taking of property without just compensation, in violation of the Fifth Amendment." <u>Id</u>. at 1373.

A unanimous Supreme Court answered this question in the affirmative, finding that "[o]ur precedents have also recognized the principle that a taxpayer is entitled to the surplus in excess of the debt owed" and holding that "Tyler has plausibly alleged a taking under the Fifth Amendment." <u>Id</u>. at 1378, 1381. In so holding, the <u>Tyler</u> Court admonished:

> "The Takings Clause 'was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' A taxpayer who loses her $40,000 house to the State to fulfill a $15,000 tax debt has made a far greater contribution to the public fisc than she owed. The taxpayer must render unto Caesar what is Caesar's, but no more." <u>Id</u>. at 1380 (internal citations omitted).

The same scenario is alleged here. Danielle Reado's First Amended Complaint claims that the City sold her property at auction to satisfy a $27,883.53 tax debt.[7] The auction drew a bid of

---

[6] Just to clarify, Danielle Reado's taking claim herein is asserted in the alternative and is conditioned upon a decision by this Court that the sale to Serpil should not be annulled.

[7] Danielle Reado's First Amended Complaint, R. 20, ¶¶ 14 to 17, 20 to 23, 43.

$121,800.00, but the City recorded a sale price of just $60,753.75 and pocketed the entire amount.[8] Regardless of which figure the Court finds to reflect the true value received by the City, there is a surplus over the tax debt ranging from $32,870.22 to $93,916.47. In other words, the City kept tens of thousands of dollars more than it was owed, just as the County did in Tyler. If there was a "plausibly alleged. . . taking under the Fifth Amendment" in Tyler, there is certainly one here also.

Nevertheless, the City argues that Danielle Reado's takings claim fails because she seeks compensation based on the fair market value of her property. But this argument is a red herring. The Tyler Court did not address the measure of just compensation that was due under the circumstances, leaving the issue open for future courts to decide. Traditionally, when a taking is found to have occurred, the Supreme Court has found that the just compensation amount is based

> "in most cases [on] the fair market value of the property on the date it is appropriated. 'Under this standard, the owner is entitled to receive 'what a willing buyer would pay in cash to a willing seller' at the time of the taking.'" Kirby Forest Industries, Inc v. United States, 467 U.S. 1, 10 (1984).

Danielle Reado has not only invoked this widely accepted standard (by alleging the fair market value to be between $99,300.00 and $178,000.00), but has also pleaded two alternative bases for calculating the just compensation that is due: the $121,800 auction bid and the $60,753.75 sale price listed on the City's "Non-Warranty Cash Sale" document.[9]

Each of these amounts exceeds the tax debt, and under Tyler, any government retention of the surplus is a per se taking. The City's attempt to dodge constitutional liability by focusing on the just compensation issue ignores the fundamental holding of Tyler: that the government cannot sell a property for tax delinquency and keep more than it is owed.

---

[8] Danielle Reado's First Amended Complaint, R. 20, ¶¶ 14 to 17, 20 to 23, 43.
[9] Danielle Reado's First Amended Complaint, R. 20, ¶ 43.

In sum, the City's position is legally indefensible. <u>Tyler</u> applies squarely. The facts are nearly identical. The Supreme Court has already spoken, clearly and unanimously. The City's refusal to return the surplus equity stripped from Danielle Reado's home is the very kind of unconstitutional taking the Fifth Amendment forbids. The City' motion to dismiss her Fifth Amendment takings claim should be summarily denied.

**E.   Danielle Reado's Requests for Declaratory Relief Regarding La. R.S. 47:2211 is Not Barred by Either the Tax Injunction Act or Mootness**

The City argues that Danielle Reado's request for a declaration that a portion of La. R.S. 47:2211 is unconstitutional[10] is barred by the Tax Injunction Act ("TIA") and/or moot. This argument is meritless. The TIA does not apply under the circumstances of this case, and the City's request for dismissal should be denied.

The TIA provides that:

> "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. 1341.

As the United States Supreme Court explained in <u>Hibbs v. Winn</u>, the TIA applies only to those cases "in which state taxpayers seek federal-court orders enabling them to avoid paying state taxes." 542 U.S. 88, 107 (2004). The TIA does not represent "a sweeping congressional direction to prevent federal-court interference with all aspects of state tax administration." <u>Id</u>. at 90. Rather, it is intended to achieve the more modest objective of "stop[ping] litigants from using federal courts to circumvent States' 'pay without delay, then sue for a refund' regimes." <u>Direct Mktg. Ass'n v. Brohl</u>, 575 U.S. 1, 19 (2015) (Ginsburg, J., concurring) (quoting <u>Hibbs v. Winn</u>, at 104–05).

---

[10] See Danielle Reado's First Amended Complaint, R. 20, ¶¶ 45 to 48 for her declaratory judgment claim concerning La. R.S. 47:2211.

Danielle Reado's First Amended Complaint does not seek a declaratory judgment regarding La. R.S. 47:2211 to help her or anyone else to avoid paying taxes. Louisiana law allows political subdivisions to adjudicate and sell immovable property to satisfy delinquent taxes. See La. R.S. 47:2196 *et seq*. Once the property is sold at an adjudication sale, La. R.S. 47:2211 directs that:

> "Except as otherwise agreed by the holders of the statutory impositions and governmental liens, all proceeds from the sale of adjudicated property after deduction of the costs of the sale shall be paid pro rata to those holders, and any amount in excess of the costs, statutory impositions, and governmental liens shall be paid to the selling political subdivision."

In other words, the part of La. R.S. 47:2211 that states that "any amount in excess of the costs, statutory impositions, and governmental liens shall be paid to the selling political subdivision" is a direction to the political subdivision that conducted the sale to pocket any surplus funds that the sale generates. There is no method whereby a person whose property was sold in an adjudication sale may seek to recover the surplus that the sale generated. Thus, the mandate in La. R.S. 47:2211 is in direct conflict with the Supreme Court's holding in <u>Tyler</u> that governmental retention of surplus proceeds from a sale of property to collect delinquent taxes constitutes a taking under the Fifth Amendment. 143 S. Ct. 1369 (2023). Danielle Reado's First Amended Complaint challenges this specific provision of La. R.S. 47:2211, seeking a declaration that it is unconstitutional because it permits post-collection governmental takings without just compensation. Crucially, the unconstitutional taking that La. R.S. 47:2211 requires occurs only after the delinquent taxes have already been collected, meaning the concerns underlying the TIA, as articulated in <u>Hibbs</u> and its progeny, are wholly absent. Granting the requested relief would not enable Danielle Reado, or any other taxpayer, to avoid paying state taxes; it would merely prevent Louisiana political

subdivisions from unlawfully retaining surplus equity beyond what is owed when they collect the debt by selling a delinquent taxpayer's property.

In <u>Freed v. Thomas</u>, the Sixth Circuit addressed whether the TIA barred a request for declaratory relief that was nearly identical to Danielle Reado's. 976 F.3d 729 (6th Cir. 2020). There, the State of Michigan sold Donald Freed's property for $42,000 to satisfy a $1,109.06 tax debt and retained the surplus proceeds for itself. <u>Id</u>. at 732. Mr. Freed filed suit seeking damages as well as declaratory and injunctive relief for the State's alleged violations of the Fifth and Eighth Amendments. <u>Id</u>. The district court dismissed the action under the TIA. <u>Id</u>. at 734. The Sixth Circuit reversed, finding that Mr. Freed's claims involved "post-collection federal constitutional violations that may proceed in federal court, not a tax case barred by the TIA." Id. at 734.

Critically, the <u>Freed</u> Court explicitly rejected the notion that declaratory relief was barred by the TIA when the statutes being challenged pertained only to the distribution of surplus proceeds that are collected with taxes:

> "In this case, however, Freed is not seeking a declaration that Michigan's tax collection procedures are unconstitutional nor is he seeking to avoid collection of a future tax. Instead, he challenges the State's post-collection tax refund procedures, or lack thereof." <u>Id</u>. at 737.

The reasoning in <u>Freed</u> is compelling and consistent with the Supreme Court's limited construction of the TIA. The City has provided this Court with no compelling reason to depart from that reasoning. Danielle Reado's declaratory judgment claim does not interfere with the assessment or collection of taxes, but rather challenges the unconstitutional retention of surplus following collection. As such, her claim falls outside the ambit of the TIA.

The City's reliance on Fifth Circuit precedent to reach a contrary conclusion is unpersuasive. To the extent those cases suggest that a broader reading of the TIA is appropriate, they are in direct conflict with the Supreme Court's guidance in <u>Hibbs</u>. Notably, many of the cases

16

cited by the City either predate <u>Hibbs</u> or rely on authority that does. Moreover, none of them address circumstances as closely aligned with this case as <u>Freed</u>. When considered together, <u>Tyler</u>, <u>Hibbs</u>, and <u>Freed</u> clearly establish that post-collection takings claims, particularly those challenging the government's retention of surplus proceeds beyond the amount of delinquent taxes owed, fall outside the scope of the TIA.

The City's mootness argument should also be rejected. While the City correctly notes that Louisiana recently enacted legislation overhauling its tax sale and adjudication system, the new statutory framework does not take effect until January 1, 2026. Until then, La. R.S. 47:2211 remains operative and continues to direct Louisiana's political subdivisions to retain surplus proceeds in violation of the Fifth Amendment's Takings Clause. A declaratory judgment issued before that date would provide meaningful relief to property owners like Danielle Reado, who remain subject to this unconstitutional provision. Moreover, the City's assertion that no resolution is possible before January 1, 2026 overlooks the possibility that Danielle Reado may seek and obtain summary judgment on the issue prior to that time. Accordingly, the City's mootness argument lacks merit and should be rejected.

Finally, the City's TIA and Article III mootness challenges are Rule 12(b)(1) challenges because they raise issues of this Court's subject matter jurisdiction over the issues. See <u>Home Builders Ass'n, Miss. v. City, Madison</u>, 143 F.3d 1006, 1010 (5th Cir. 1998). District Courts are "precluded. . . from dismissing plaintiffs' claims with prejudice when the basis for the dismissal is lack of subject matter jurisdiction under Rule 12(b)(1)." <u>Campos v. United States</u>, 888 F.3d 724, 738 (5th Cir. 2018). Thus, any dismissal of Danielle Reado's declaratory judgment claim regarding La. R.S. 47:2211 cannot be made with prejudice as the City requests, but must be made without prejudice.

For these reasons, the City's motion to dismiss Danielle Reado's declaratory judgment claim regarding La. R.S. 47:2211 should be denied. The TIA does not bar Danielle Reado's challenge because she does not seek to avoid paying taxes, but to stop the unconstitutional retention of surplus proceeds after taxes are collected. Hibbs, Tyler, and Freed confirm that such post-collection takings claims fall outside the TIA's scope. Nor is the claim moot, as La. R.S. 47:2211 will remain in effect until January 1, 2026, and a declaratory judgment before then would provide meaningful relief. Danielle Reado's claim is both timely and justiciable and the City's request for dismissal should be denied.

**F.    Danielle Reado's Requests for Declaratory Relief Regarding La. Const. Art. XII, § 10(c) Cannot Be Dismissed Based on Speculative Jurisdictional Objections or the Availability of State Remedies**

The City's argument that Danielle Reado's challenge to Louisiana Constitution Art. XII, § 10(c) should be dismissed for lack of an actual controversy ignores both the well-pleaded facts of the First Amended Complaint and the nature of declaratory relief.

Danielle Reado has alleged a concrete and credible legal threat: that if she prevails on her Fifth Amendment takings claim, the City may invoke La. Const. Art. XII, § 10(c) to try and avoid paying the resulting judgment.[11] This concern is far from speculative. Louisiana political subdivisions, including the City, have a documented history of using this provision to delay or avoid satisfaction of judgments. See e.g. Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans, 29 F.4th 226 (5th Cir. 2022). That repeated conduct gives rise to a genuine and imminent risk that the City will do the same here, creating a justiciable controversy under Article III.

Declaratory relief exists precisely to resolve legal uncertainty before the threatened injury materializes. As the Supreme Court noted in MedImmune, Inc. v. Genentech, Inc., the question is

---

[11] Danielle Reado's First Amended Complaint, R. 20, ¶¶ 49-51.

whether "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 549 U.S. 118, 127 (2007). That standard is plainly met here. Danielle Reado is actively litigating a takings claim that, if successful, will result in a judgment requiring the City to pay just compensation. That obligation has been deemed by the Supreme Court to be "self-executing" which means that it should not be subject to legislative discretion or procedural delay. <u>Knick v. Township of Scott</u>, 139 S. Ct. 2162, 2171 (2019).

Critically, the City has not disavowed reliance on La. Const. Art. XII, § 10(c). Its silence only amplifies the plausibility of Reado's concern and underscores the need for judicial resolution. This is particularly true given that political subdivisions in Louisiana, as demonstrated in <u>Watson Memorial Spiritual Temple of Christ v. Korban</u>, have already invoked Article XII, § 10(c) to attempt to avoid just compensation judgments issued by state courts. 387 So.3d 499 (La. 2024). There is no reason to believe that such tactics would not be employed here, even where the judgment arises under the Fifth Amendment.

The City's contention that the existence of a possible mandamus remedy under state law deprives this Court of jurisdiction is also meritless. The City cites no authority for the radical proposition that the availability of a state-law remedy strips a federal court of jurisdiction to consider a request for declaratory relief. To the contrary, 28 U.S.C. § 2201 explicitly provides for litigants to seek declaratory relief of questions concerning federal law in federal courts. "Federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.'" <u>Aptim Corp. v. McCall</u>, 888 F.3d 129, 135 (5th Cir. 2018), *citing* <u>Colo. River Water Cons. Dist. v. U.S.</u>, 424 U.S. 800, 817 (1976). Reado is entitled to enforce her just compensation rights under federal

law in a federal forum, not be relegated to a potentially illusory or delayed state process that invites the very constitutional conflict she seeks to avoid.

At its core, Danielle Reado's claim presents a live legal dispute: whether a state constitutional provision can be used to override the federal obligation to pay just compensation for a taking. That is precisely the kind of legal uncertainty declaratory relief under 28 U.S.C. § 2201 is designed to address. The City's motion to dismiss should, therefore, be denied.

## CONCLUSION

The City's multiple requests for dismissal pursuant to Rule 12(b)(6), and the City's jurisdictional challenges under Rule 12(b)(1) should be denied. In the event that any of Danielle Reado's claims are dismissed as a result of the City's request, a dismissal without prejudice would be warranted.

Respectfully submitted,

**PRITCHETT LEGAL SERVICES, LLC**

/s/ Paul W. Pritchett
**PAUL W. PRITCHETT (#36926)**
2930 Banks Street
New Orleans, Louisiana 70119
Telephone: 602-402-6264
Email: ppritchett@pritchettlegal.com
*Attorney for Plaintiff, Danielle Reado*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 18, 2025, the foregoing was filed electronically using the CM/ECF system which will send notice of electronic filing to all counsel of record.

/s/ Paul W. Pritchett