UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DANIELLE READO                                          CIVIL ACTION

VERSUS                                                     NO. 24-2451

CITY OF NEW ORLEANS AND                      SECTION "R" (1)
SERPIL PROPERTIES, LLC

## ORDER AND REASONS

Before the Court are defendants' City of New Orleans (the "City") and Serpil Properties ("Serpil") motions to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] Plaintiff Danielle Reado opposes the motions.[2] For the following reasons, the Court grants in part and denies in part defendants' motions to dismiss.

## I.    BACKGROUND

This action arises out of the Tax and Adjudication sales of the property at 4715 Laine Avenue, New Orleans, Louisiana (the "property").[3] The property was allegedly adjudicated to the city for failure to pay ad valorem

---

[1]    R. Docs. 25, 27.
[2]    R. Docs. 32, 33.
[3]    R. Doc. 20 at ¶¶ 1, 9.

taxes at a tax sale on September 25, 2012 ("Tax Sale").[4]  The tax sale was recorded in the Orleans Parish Conveyance records on May 23, 2016.[5]  At the time of the tax sale, the property was allegedly owned by plaintiff's mother Gwendolyn Reado.[6]  In October 2021, plaintiff allegedly acquired ownership of the property through a quitclaim deed from her mother.[7]  Thereafter, the quitclaim deed was recorded in the Orleans Parish Conveyance records.[8]  On January 20, 2023, the city allegedly sold the property to Serpil for $60,757.75 as part of a bundle, the winning bid for which was $121,800.[9]  The sale of the property ("Adjudication Sale") was recorded in the Orleans Parish Conveyance records on January 24, 2023.[10]  At the time of the Adjudication Sale, the outstanding tax bill for the property was allegedly $27,883.53.[11]

Plaintiff alleges that neither she nor her mother received notice of the Tax Sale.[12]  Plaintiff further alleges that she did not receive notice of the Adjudication Sale.[13]  Plaintiff additionally alleges on information and belief

---

[4]    *Id.* at ¶ 10.
[5]    *Id.*
[6]    *Id.* at ¶ 11.
[7]    *Id.* at ¶ 12.
[8]    *Id.*
[9]    *Id.* at ¶¶ 14, 16.
[10]    *Id.* at ¶ 14.
[11]    *Id.* at ¶ 20.
[12]    *Id.* at ¶ 13.
[13]    *Id.* at ¶ 18.

that, to the extent that she or her mother received notice of the sales, those notices were legally insufficient.[14]   Plaintiff also alleges that she did not receive any compensation associated with the Adjudication Sale.[15]

On October 10, 2024, plaintiff filed this suit against the City and Serpil.[16]   In her amended complaint, plaintiff brings multiple claims: (1) violations of due process based on insufficient notice of the tax and adjudication sales; (2) violation of the Eighth Amendment's Excessive Fines Clause based on the adjudication sale; (3) a takings claim under the Fifth Amendment based on the adjudication sale; and (4) a request for declaratory relief under 28 U.S.C. § 2201.[17]   Plaintiff asks the Court to nullify the Tax and Adjudication sales.[18]   Alternatively, plaintiff seeks just compensation.[19]   Plaintiff also seeks declaratory judgments as to the constitutionality of Louisiana Revised Statute § 47:2211, and Louisiana Constitution Art. XII, § 10(c).[20]

Defendants now bring motions to dismiss plaintiff's claims.   The City argues that plaintiff lacks claims: (1) to nullify the Tax Sale on due process

---

[14]    *Id.* at ¶¶ 13, 18.
[15]    *Id.* at ¶ 22.
[16]    R. Doc. 1.
[17]    R. Doc. 20 at ¶¶ 25-51.
[18]    *Id.* at ¶ 52.
[19]    *Id.*
[20]    *Id.*

3

grounds because she lacks standing to sue based on insufficient notice to her mother and had no independent right to receive notice of the Tax Sale; (2) under the Eighth Amendment because tax and adjudication sales are constitutional; (3) under the Fifth Amendment, because the Constitution does not protect her alleged equity in the context of a tax sale; and (4) to receive a declaration of the alleged unconstitutionality of either La. R.S. 47:2211 or Louisiana Constitution, art. XII, § 10(C) for multiple reasons.[21] Defendant Serpil adopts the City's motion.[22]  Plaintiff opposes the motions.[23] The Court considers the parties' arguments below.

## II.    LEGAL STANDARD

When a 12(b)(1) motion is brought with other Rule 12 motions to dismiss, the 12(b)(1) motion must be addressed first.  *Ramming v. United States*, 281 F. 3d 158, 161 (5th Cir. 2001).

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of an action if the court lacks jurisdiction over the subject matter of the plaintiff's claim. Motions submitted under Rule 12(b)(1) allow a party to challenge the court's

---

[21]    R. Doc. 25.
[22]    R. Doc. 27.
[23]    R. Docs. 32, 33.

subject-matter jurisdiction based upon the allegations on the face of the complaint. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by the undisputed facts plus the court's resolution of disputed facts." *Moore v. Bryant*, 853 F.3d 245, 248 (5th Cir. 2017) (quoting *Barrera-Montenegro*, 74 F.3d at 659). The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists. *See Spokeo v. Robins*, 578 U.S. 330, 338 (2016).

If the court lacks the statutory or constitutional power to adjudicate a claim, the claim must be dismissed for lack of subject matter jurisdiction. *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). A court has federal question jurisdiction when the plaintiff's claim arises under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. A claim arises under federal law when federal law creates the cause of action. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). The mere presence of a federal issue "does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986); *cf. Grable*, 545 U.S. at 314 (a state-law claim can give rise to federal question

jurisdiction if it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities").

A court's dismissal of a case for lack of subject-matter jurisdiction is not a decision on the merits, and the dismissal does not necessarily prevent the plaintiff from pursuing the claim in another forum. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

### B. Federal Rule of Civil Procedure 12(b)(6)

When a defendant attacks the complaint because it fails to state a legally cognizable claim, Rule 12(b)(6) provides the appropriate challenge. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d

6

228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that the party's claim is true. *See Iqbal*, 556 U.S. at 678. It need not contain "detailed factual allegations," but it must go beyond "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *See id.* (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand*, 565 F.3d at 257 (citations omitted). The claim must be dismissed if there are insufficient factual allegations "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *see Jones v. Bock*, 549 U.S. 199, 215 (2007).

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.* "The district court 'may

also consider matters of which [it] may take judicial notice.'" *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)).

## III.   DISCUSSION

### A.   Constitutionality of Louisiana Revised Statute § 47:2211 and Louisiana Constitution, art. XII, § 10(C)

Defendants argue that plaintiff has no right to a declaration of the alleged unconstitutionality of either Louisiana Revised Statute § 47:2211, or Louisiana Constitution, art. XII, § 10(C) because: (1) the Tax Injunction Act bars Plaintiff's challenge to La. R.S. 47:2211; (2) plaintiff's claim as to La. R.S. 47:2211 is moot; (3) plaintiff lacks standing to challenge Louisiana Constitution, art. XII, 10(C); and (4) plaintiff failed to state a plausible claim to declare Louisiana Constitution, art. XII, § 10(C) unconstitutional.  The Court considers each argument in turn.

#### 1. *The Tax Injunction Act*

The Tax Injunction act provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341.  The Act is "first and foremost a

vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 522 (1981) (internal citations omitted).  Federal courts interpret the statutory text to advance that purpose. *ANR Pipeline Co. v Louisiana Tax Comm'n*, 646 F.3d 940, 946 (5th Cir. 2011) ("[T]his statutory text should be interpreted to advance its purpose of 'confin[ing] federal-court intervention in state government.'" (quoting *Arkansas v. Farm Credit Servs. Of Cent. Ark.*, 520, 821, 826-27 (1997)).

The Fifth Circuit has made clear that the Tax Injunction Act "is not a narrow statute aimed only at injunctive interference with tax collection, but is rather a broad restriction on federal jurisdiction in suits that impede state tax administration. . . ." *United Gas Pipe Line Co. v. Whitman*, 595 F.2d 323, 326 (5th Cir. 1979); *see also Hammonds v. Dallas Cty.*, 815 F. App'x 787, 787 (5th Cir. 2020) ("[T]he [Tax Injunction Act] is a broad jurisdiction[al] impediment to federal court interference with the administration of state tax systems.") (internal citations omitted).  The Act "applies with full force to taxes 'imposed by municipalities,'" *Hammonds*, 815 F. App'x at 787 (quoting *Home Builder's Ass'n v. City of Madison*, 143 F.3d 1006, 1010 n.6 (5th Cir. 1998)), and "extends to the broader activities of assessing, levying, and collecting taxes." *Id.* at 787-88.

Here, plaintiff seeks a declaration of her rights under La. R.S. 47:2211. She argues that the Tax Injunction Act does not apply because she is not seeking to avoid paying taxes but seeks relief from the allegedly unconstitutional retention of money collected in excess of the outstanding tax bill. La. R.S. 47:2211 provides:

> Except as otherwise agreed by the holders of the statutory impositions and governmental liens, all proceeds from the sale of adjudicated property after deduction of the costs of the sale shall be paid pro rata to those holders, and any amount in excess of the costs, statutory impositions, and governmental liens shall be paid to the selling political subdivision.

The text of this section is clear that it involves only post-tax collection procedures. The question is thus whether post-tax collection procedures are part of the "broad activities of assessing, levying, and collecting taxes." *Hammonds*, 815 F. App'x at 787-88. The Court finds that they are not. Other courts that have addressed the issue presented here have concluded that claims like those asserted here are not barred by the Tax Injunction Act. *See Freed v. Thomas*, 976 F.3d 729, 737 (6th Cir. 2020) (holding that the Tax Injunction Act did not bar federal jurisdiction when a plaintiff asserted "that the State took his property—the surplus sale proceeds and excess equity—after collecting his tax debt without providing just compensation"); *Coleman v. District of Columbia*, 70 F. Supp. 3d 58, 66-68 (D.D.C. 2014) (same); *Dorce v. City of New York*, 2 F.4th 82, 99 (2d Cir. 2021) (finding the

reasoning in *Freed* and *Coleman* persuasive); *cf. Hibbs v. Winn*, 542 U.S. 88, 105-06 (2004) (holding that the Tax Injunction act does not bar all claims relating to state tax administration, but has the more limited scope of barring claims that disrupt the state's collection of revenue). Accordingly, the Tax Injunction Act does not bar this Court from hearing plaintiff's challenge to La. R.S. 47:2211.

### 2. Mootness as to La. R.S. 47:2211

Article III of the U.S. Constitution limits federal jurisdiction to cases or controversies. U.S. Const. art. III, §2. "Mootness is one of the doctrines that ensures federal courts are only deciding live cases or controversies." *Spell v. Edwards*, 962 F.3d 175, 178-79 (5th Cir. 2020) (citing *Campbell-Ewald Co. v. Gomez*, 5777 U.S. 153, 160-61 (2016)). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (*per curium*) (internal quotations omitted)).

A case challenging a statute, then, would "usually become[] moot if the challenged law has expired or been repealed." *Spell*, 962 F.3d at 179 (citing *Veasey v. Abbott*, 888 F.3d 792, 799 (5th Cir. 2018) ("Ordinarily, a[n]

[action] challenging a statute would become moot by the legislature's enactment of a superseding law.").  "Once the law is off the books, there is nothing injuring the plaintiff and, consequently, nothing for the court to do." *Id.* (first citing *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 590 U.S. 336, 339 (2020) (holding that a claim for injunctive relief against a law was moot when the law was amended to give "the precise relief that [the plaintiffs requested]"); and then citing *Amawi v. Paxton*, 956 F.3d 816, 819-21 (5th Cir. 2020) (dismissing an appeal as moot because a statutory amendment "provided the plaintiffs the very relief their lawsuit sought")).

Louisiana recently enacted legislation that overhauls its procedures regarding post-tax collection procedures for adjudication sales.  But the new statutory framework does not become effective until January 1, 2026.  Until then, La. R.S. 47:2211 is still operative.  Thus, as of the date of this order, plaintiff's claims are not moot.

### 3. *Standing to challenge Article XII, § 10(C) of the Louisiana Constitution*

Plaintiff argues that Louisiana Constitution Article XII, § 10(C) is routinely used by political subdivisions in Louisiana to avoid paying judgments rendered against it.[24]  Accordingly, plaintiff seeks to challenge the

---

24    R. Doc. 20 at ¶ 51.

constitutionality of Article XII, § 10(C) of the Louisiana Constitution. Defendants argue that the Amended Complaint lacks well-pleaded facts that, if proved, would establish any controversy between plaintiff and the City regarding this provision.[25]   Section 10(C) of Article XII of the Louisiana Constitution states:

> Limitations; Procedure; Judgments.  Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages.  It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure.   The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims.  *No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.*

(emphasis added).

Article III standing is an element of the court's subject-matter jurisdiction.  *See Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 4 (2023).  "The party invoking federal jurisdiction bears the burden of establishing these elements."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  To establish Article III standing, a plaintiff must establish: "(1) an 'injury in fact,' (2) a

---

[25]    R. Doc. 25-1 at 21.

sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likeli[hood]' that the injury 'will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (quoting *Lujan*, 504 U.S. at 560). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 573 U.S. at 560). "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, with is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." *Lujan*, 504 U.S. at 564, n.2. "Allegations of possible future injury do not satisfy the requirements of Art. III." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

Here, plaintiff's alleged injury is a possible future one. This claim of injury requires the following chain of events. First, plaintiff must succeed on her Fifth Amendment claim and be awarded just compensation. Second, the City of New Orleans would have to invoke § 10(C) to avoid paying that judgment. The Court finds that such an injury is not "certainly impending" as required to satisfy the requirements of Article III standing. *See id.*

Accordingly, the Court dismisses without prejudice plaintiff's challenge to Article XII, § 10(C) of the Louisiana Constitution.

> ### 4.  Failure to state a claim regarding Article XII, § 10(C) of the Louisiana Constitution

Because the Court dismisses plaintiff's claim regarding the constitutionality of Louisiana Constitution Article XII, § 10(C) on standing grounds, it does not reach this argument.

## B.  Nullity of the Tax Sale

Plaintiff seeks to have the Tax and Adjudication Sales set aside as absolute nullities or as redemption nullities.  Defendants challenge plaintiff's standing to nullify the Tax Sale.  The Court considers the various arguments regarding nullity below.

La. R.S. 47:2121, *et seq.*, governs the payment and collection of property taxes, tax sales, and redemptions.  Under the 2008 reforms, at a tax sale, "tax sale title" is sold as a certificate redeemable by tax debtors for three years from the date of the recordation of the tax sale certificate.  La. R.S. 47:2156; La. Const. art. VII, § 25(B).  A tax sale certificate converts to ownership of the tax sale properly only when the redemption period has expired, and the interested parties are duly notified of the tax sale.  La. R.S. 47:2121(B).  Per the statute, a party is "duly notified" when

15

an effort meeting the requirements of due process of law has been made to identify and to provide that person with a notice that meets the requirements of R.S. 47:2156, 2157, 2206, 2236, or 2275, or with service of a petition and citation in accordance with R.S. 47:2266, regardless of any of the following:

(a) Whether the effort resulted in actual notice to the person.
(b) Whether the one who made the effort was a public official or a private party.
(c) When, after the tax sale, the effort was made.

La. R.S. 47:2122(4).

Tax debtors have a constitutional right to redeem property sold at a tax sale within the redemptive period. La. Const. art. VII, § 25(B). If the redemptive period has expired, a tax sale party may still bring an action to annul the tax sale based on "payment nullity, redemption nullity, or a nullity under R.S. 47:21612." La. R.S. 47:2286. These three nullities are relative, which, unlike absolute nullities, can be cured. *See Adair Asset Mgmt., LLC v. Turney*, 195 So. 3d 501, 512-13 (La. Ct. App. 2 Cir. 2016). A payment nullity claim "can be cured by acquisitive prescription." La. R.S. 47:2286 cmt. A redemption nullity claim "can be cured by the giving of notice and the passage of time." *Id.* And a claim of nullity under R.S. 47:21612 can be "cured by a sale to a good faith purchaser." *Id.*

Defendants argue that plaintiff cannot bring a claim that the Tax Sale is an absolute nullity. This is correct. The applicable statutory scheme is clear that there are only three nullities, all of which are relative: redemption

16

nullities, La. R.S. 47:2122; payment nullities, La. R.S. 47:2122; or sales to a prohibited buyer, La. R.S. 47:2162. *See Adair Asset Mgmt.*, 195 So.3d at 513. As the Louisiana Court of Appeal in *Adair Asset Mgmt.* held, this statutory scheme aimed to remove the previous uncertainty resulting from the "possibility that a tax sale could be invalidated at any time as an absolute nullity." *Id.* at 512-13. That court further found that the statutory scheme sought to "reconcile[] the requirements of due process under *Mennonite*,[26] with a system that both provides a fair process for the redemption of tax sale properties and encourages the return to commerce of such properties subject to tax sale." *Id.*

The Court next considers whether plaintiff can challenge the Tax Sale as a relative nullity. Defendants argue that plaintiff was not a party to whom notice was Constitutionally or statutorily required. Plaintiff argues that the alleged defect in sale–the alleged lack of notice to her mother–follows the property and passes to subsequent owners.

In *Mooring Tax Asset Grp., LLC v. James*, the Louisiana Supreme Court found that the current record owner of a property "properly sought to annul the tax sale even though he was not the tax debtor or property owner at the time of the sale." 156 So. 3d 1143, 1151 (La. 2014). Defendants argue

---

[26]    *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983).

that *Mooring* is distinguishable because *Mooring* acquired the property at issue via cash sale, whereas plaintiff acquired the property at issue here via quitclaim.  For the reasons that follow, the Court finds this distinction inapt.

As all parties agree, on or around October 1, 2021, plaintiff's mother executed a quitclaim deed, transferring any rights or interests she had in the property at the time to plaintiff.  A quitclaim deed "is an instrument that purports to convey nothing more than the interest or estate of the grantor, if any he has, at the time of the conveyance, rather than the property itself." La. Civ. Code art. 2502 Revision Comment (c); *see also Franklin v. Camterra Resources Partners, Inc.*, 123 So. 3d 184, 187 (La. App. 2d Cir. 2013).  Thus, the quitclaim deed conveyed to plaintiff only the rights or interests that plaintiff's mother had, if any, to the property at issue on that date.

At that time, a tax sale of the property in question had already taken place.  As defendants argue, plaintiff obtained only her mother's post-tax sale interest in the property.  However, based on the tax sale law in effect in 2012, plaintiff's mother continued to have an interest in the property following the sale.  *See Cent. Props. v. Fairway Gardenhomes, LLC*, 225 So. 3d 441, 448-49 (La. 2017).  Indeed, "[u]nder the tax sale law as amended in 2008, the tax collector no longer auctions the real estate itself; instead, the tax collector auctions a tax sale title to the property . . . which neither transfers nor

18

terminates the property interest of any person in the property." *Id.* (first citing La. Rev. Stat. 47:2121(B) ("No tax sale shall transfer or terminate the property interest of any person in tax sale property or adjudicated property until that person has been duly notified and . . . the redemptive period . . . [has] terminated."); and then citing La. Rev. Stat. 47:2121(C) ("A tax sale title confers on the tax sale purchaser . . . only tax sale title. . . .")). Thus, plaintiff's mother continued to hold her interest in the property until she was "duly notified" and "the redemptive period . . . terminated." La. Rev. Stat. 47:2121(B). Plaintiff alleges that her mother was never notified of the tax sale. Taking this as true, in 2021, when plaintiff's mother transferred the property to plaintiff via the quitclaim deed, plaintiff's mother still held interest in the property to transfer to plaintiff, and the City held only tax sale title. Accordingly, the Court finds that, even though plaintiff was not the tax debtor or property owner at the time of the sale, as the current interest-holder in the property, she has standing bring the due process claim. *See Mooring*, 156 So.3d at 1151.

Defendants argue that even if plaintiff's mother's right to receive notice of the Tax Sale was transferred, the Louisiana public records doctrine bars plaintiff's claim. They argue that plaintiff had constructive notice of the Tax

Sale at or before obtaining the property via quitclaim deed.  Plaintiff argues

that constructive notice is insufficient.

It is true that the corollary to the public records doctrine[27] is that all

persons are held to have constructive notice of the existence and contents of

recorded instruments affecting real estate.  *See Judice-Henry-May Agency,*

*Inc. v. Franklin*, 376 So.2d 991 (La. Ct. App. 1st Cir. 1979).  But it is also true

that  constructive  notice  is  generally  insufficient  to  meet  the  notice

requirements for terminating a property interest.  Under La. R.S. 47:2122,

> "[d]uly notified" means, with respect to a particular person, that
> an effort *meeting the requirements of due process of law* has
> been made to identify and to provide that person with a notice
> that meets the requirements of R.S. 47:2156, 2157, 2206, 2236,
> or 2275, or with service of a petition and citation in accordance
> with R.S. 47:2266 . . . .

(emphasis added).  Due process requires "actual notice of the pending

tax sale by the tax collector's mailing of the notice of delinquency to each

owner of record . . . if the name and address of the owner are reasonably

ascertainable."  2 La. Prac. Real Est. *Requirement of notice and due process*

§ 17:12 (2d ed.) (citing *Allied Tax Fund, LLC v. Chin Hong Bow & Co., Inc.*,

155 So. 3d 524 (La. Ct. App. 4th Cir. 2013)).

---

[27]    The public records doctrine itself generally requires that interests in
real estate must be recorded to affect third parties.  La. Civ. Code art.
3338.

However, plaintiff was not an "owner of record" at the time of the tax sale, her mother was. The crux of the dispute is whether this distinction matters. At issue is whether constructive notice is sufficient to terminate a successor in interest's property interest. Defendants have cited no support for such a proposition. Without clear Louisiana precedent, the Court will not announce a bright-line rule that recordation of a tax sale suffices as notice of that sale to successors in interest. Accordingly, at this juncture, the Court finds that the public records doctrine does not preclude plaintiff's claims.

Finally, plaintiff alleges in the alternative that if she or her mother were sent notices, those notices were insufficient. Plaintiff has not pled any facts regarding how the notices, which she avers they never received, were insufficient. Plaintiff has not plausibly alleged insufficient notice.

Accordingly, the Court finds that plaintiff has standing to bring her claim to nullify the tax sale as a redemption nullity based on lack of notice, but not based on insufficient notice. The Court dismisses plaintiff's claim that the tax sale is an absolute nullity for failure to state a claim upon which relief can be granted.

### C.    Takings Claim

Plaintiff argues that if this Court finds the sales are not nullities, she is entitled to receive just compensation.[28]  Plaintiff basis her argument in the Takings Clause of the Fifth Amendment to the United States Constitution.[29] Defendants argue that plaintiff has no plausible claim to recover the "equity" she allegedly had in the property less the tax debts.[30]

The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment provides that "private property [shall not] be taken for public use without just compensation."  U.S. Const., amend V.  The Supreme Court recently addressed the issue of whether retention of a surplus from a tax sale constitutes a taking, unanimously holding "that a taxpayer is entitled to the surplus in excess of the debt owed."  *Tyler v. Hennepin Cnty., MN*, 598 U.S. 631, 642 (2023).  In *Tyler*, Hennepin County, Minnesota, sold a delinquent taxpayer's house for $40,000 to satisfy a $15,000 tax bill and retained the remaining $25,000.  *Id.* at 635.  The Supreme Court held that Tyler "stated a claim under the Takings Clause and is entitled to just compensation."  *Id.* at 639.

---

[28]    R. Doc. 20 at ¶¶ 37-44.

[29]    *Id.*

[30]    R. Doc. 25-1 at 15-16.

Plaintiff's claims are akin to the claims in *Tyler*. The Court finds that plaintiff has adequately pled a violation of her Fifth Amendment rights. However, in her complaint plaintiff seeks not just the retention of the difference between the sale price and the tax debt.[31] Plaintiff argues that she is entitled to compensation based on her alleged "equity" or the "fair market value" of the property.[32] The Court finds plaintiff's claim that she's owed the difference between the fair market value of the property and the outstanding tax bill unsupportable.

The Supreme Court has not held that a plaintiff whose property is sold for failure to pay taxes is entitled to recoup the fair market value of that property and, the Sixth Circuit, addressing this very issue post-*Tyler*, rejected plaintiff's position. *Freed v. Thomas*, 81 F.4th 655, 658 (6th Cir. 2023). In *Freed*, the Sixth Circuit stated that "[n]either this Court nor the Supreme Court has ever held that a plaintiff whose property is foreclosed and sold at a public auction for failure to pay taxes is entitled to recoup the fair market value of the property." *Id.* In rejecting the proposition that fair market value is reasonable, the Sixth Circuit further explained that "awarding the fair market value of a property instead of the price obtained at

---

[31]    R. Doc. 20 at ¶¶ 37-44.
[32]    *Id.*

a public tax foreclosure sale 'would run contrary to the general principle that just compensation is measured by the value of the property *taken*' and would 'not only . . . [take] money away from the public' but would also allow plaintiffs to 'benefit from their tax delinquency.'" *Id.* at 659 (quoting *Rafaeli, LLC v. Oakland Cnty.*, 952 N.W.2d 434, 465-66 (2020)). The Court finds that awarding the fair market value "would run contrary to the general principle that just compensation is measured by the value of the property taken." *Rafaeli*, 952 N.W.2d at 465.

Accordingly, plaintiff has adequately pled a claim for relief based on the actual sale price but not the fair market value or "equity" in the property. The Court dismisses plaintiff's claim for compensation based on the fair market value of the property for failure to state a claim.

### D.    Excessive Fines Claim

Plaintiff brings an excessive fines claim. This claim substantially overlaps with her Fifth Amendment claim, and the relief sought is the same. The Court is to avoid reaching constitutional issues when a case can be resolved on other bases. *See St. Joseph Abbey v. Castille*, 700 F.3d 154, 165 (5th Cir. 2012); *County Court of Ulster County v. Allen*, 442 U.S. 140, 154 (1979) (federal courts "have a duty to decide constitutional questions when necessary" but also "have an equally strong duty to avoid constitutional

issues that need not be resolved in order to determine the rights of the parties"). The Supreme Court has already spoken on the application of the takings clause to the retention of excess profits from a tax sale, but a majority has not yet spoken on the same with regards to excessive fines claims. Because a finding that defendant's actions constitute a taking or an excessive fine entitle plaintiff to the same relief, the Court avoids reaching the issue of whether defendant's actions constitute a violation of the Eighth Amendment's prohibition on excessive fines. Accordingly, the Court dismisses plaintiff's excessive fines claim without prejudice.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART defendants' motions to dismiss as set forth above.

The Court DISMISSES plaintiff's challenge to Article XII, § 10(C) of the Louisiana Constitution WITHOUT PREJUDICE.

The Court DISMISSES plaintiff's claim that the tax sale is an absolute nullity WITH PREJUDICE.

The Court DISMISSES plaintiff's claim for compensation based on the fair market value of the property WITH PREJUDICE.

The Court DISMISSES plaintiff's excessive fines claim WITHOUT PREJUDICE.

The Court DENIES defendants' motions as to the remaining claims.


New Orleans, Louisiana, this 21st day of November, 2025.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE