No. _____

In the
# Supreme Court of the United States

MICHAEL PUNG,
Personal Representative of the
Estate of Timothy Scott Pung,
*Petitioner,*

*v.*

ISABELLA COUNTY, MICH.,
*Respondent.*

ON PETITION FOR A WRIT OF CERTIORARI TO
THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**PETITION FOR A WRIT OF CERTIORARI**

PHILIP L. ELLISON
  *Counsel of Record*
OUTSIDE LEGAL COUNSEL PLC
  *530 West Saginaw St*
  *Hemlock, MI 48626*
  *(989) 642-0055*
  *pellison@olcplc.com*

LEGAL PRINTERS LLC ● Washington, DC ● 202-747-2400 ● legalprinters.com

Exhibit 2

## QUESTIONS PRESENTED

Isabella County confiscated the Pung Estate's private home for approximately $2,200 in taxes and fees (that were never actually owed). The lower courts used the artificially depressed auction sale price rather than the property's fair market value as the starting point for its damages calculation. The Sixth Circuit and others have held that the "fair market value" taken is not what is owed to begin to fulfill the constitutional compensatory obligation imposed by the Fifth Amendment. That defies this Court's precedents. And if it is not taken within the meaning of the Fifth Amendment, it is otherwise an excessive fine under the Eighth Amendment by imposing a punishment by pilfering far more than ever needed to satisfy a small debt.

The questions presented are:

1.    Whether taking and selling a home to satisfy a debt to the government, and keeping the surplus value as a windfall, violates the Takings Clause of the Fifth Amendment when the compensation is based on the artificially depressed auction sale price rather than the property's fair market value?

2.    Whether the forfeiture of real property worth far more than needed to satisfy a tax debt but sold for fraction of its real value constitutes an excessive fine under the Eighth Amendment, particularly when the debt was never actually owed?

*i*

## PARTIES TO THE PROCEEDING

Petitioner (plaintiff-appellant below) is Michael Pung as the Personal Representative of the Estate of Timothy Scott Pung. Respondent (defendant-appellee below) is Isabella County, Michigan.

## RELATED PROCEEDINGS

United States District Court (W.D. Mich.):
 *Pung v. Kopke*, No. 1:18-cv-01334

United States District Court (E.D. Mich.):
 *Pung v. Isabella Cnty.*, No. 1:20-cv-13113\*

United States Court of Appeals (6th Cir.):
 *Pung v. Kopke*, Nos. 22-1919 and 22-1939

---

 \* The case was transferred to United States District Court for the Eastern District of Michigan from the Western District of Michigan during the litigation and assigned this new case number.

## TABLE OF CONTENTS

QUESTIONS PRESENTED ........................................ *i*

PARTIES TO THE PROCEEDING........................... *ii*

RELATED PROCEEDINGS...................................... *ii*

TABLE OF AUTHORITIES ..................................... *iv*

PETITION FOR A WRIT OF CERTIORARI .............1

OPINIONS BELOW....................................................1

JURISDICTION...........................................................1

CONSTITUTIONAL AND STATUTORY
PROVISION INVOLVED ...........................................1

INTRODUCTION ......................................................3

STATEMENT OF THE CASE ....................................4

REASONS FOR GRANTING THE PETITION .........7

    I.     Fifth Amendment....................................8

    II.    Eighth Amendment...............................13

    III.   An Ideal Case ........................................18

    IV.   Certiorari is Warranted ........................21

CONCLUSION.........................................................22

# TABLE OF AUTHORITIES

**Cases**

*Albert Hanson Lumber Co. v. United States*
261 U.S. 581 (1923) .................................................10

*Almota Farmers Elevator & Whse Co. v.
United States,* 409 U.S. 470 (1973).........................10

*Armstrong v. United States,*
364 U.S. 40 (1960) ..................................................12

*Austin v. United States,*
509 U.S. 602 (1993) .....................................14, 15, 18

*Boston Chamber of Commerce v. Boston,*
217 U.S. 189 (1910) .................................................12

*Brown v. Legal Found. of Wash.,*
538 U.S. 216 (2003) .................................................12

*Browning-Ferris Indus. of Vt., Inc. v. Kelco
Disposal, Inc.,* 492 U.S. 257 (1989)...................13, 14

*Coleman v. Dist. of Columbia,*
2016 U.S. Dist. LEXIS 200937 (D.D.C. 2016)...........7

*Cooper Industries, Inc. v. Leatherman Tool
Group, Inc.,* 532 U.S. 424 (2001) .............................13

*Crane v. Commissioner,*
331 U.S. 1 (1947) ....................................................11

*First English Evangelical Lutheran Church of Glendale v. Cnty. of L.A.,* 482 U.S. 304 (1987)..........8

*Freed v. Thomas,*
81 F.4th 655 (6th Cir. 2023) ..........................7, 11, 17

*Hall v. Meisner,*
51 F.4th 185 (6th Cir. 2022) ...............................7, 17

*Jacobs v. United States,*
290 U.S. 13 (1933) ....................................3, 10, 13, 19

*Keweenaw Bay Outfitters v. Dep't of Treasury,*
651 N.W.2d 138 (Mich. Ct. App. 2002)....................15

*Knick v. Twp. of Scott,*
588 U.S. 180 (2019) ...........................................10, 13

*Polizzi v. Cnty. of Schoharie,*
720 F. Supp. 3d 141 (N.D.N.Y. 2024) ........................7

*Rafaeli, LLC v. Oakland Cnty.,*
952 N.W.2d 434 (Mich. 2020) ..................................10

*Seaboard Air Line R. Co. v. United States,*
261 U.S. 299 (1923) ................................................10

*Smith v. Cliffs on the Bay Condominium Ass'n,*
626 N.W.2d 905 (Mich. Ct. App. 2001)....................15

*Timbs v. Indiana,*
586 U.S. 146 (2019) ......................................13, 14, 16

*Tyler v. Hennepin Cnty., Minn.,*
598 U.S. 631 (2023) ..................3, 9, 13, 14, 16, 18, 20

*United States v. 564.54 Acres of Land,*
441 U.S. 506 (1979) .................................................. 10

*United States v. Bajakajian,*
524 U.S. 321 (1998) ............................................ 16, 17

*United States v. Causby,*
328 U.S. 256 (1946) ................................................... 8

*United States v. Miller,*
317 U.S. 369 (1943) ................................................. 10

*United States v. New River Collieries Co.,*
262 U.S. 341 (1923) ................................................... 3

*United States v. Reynolds,*
397 U.S. 14 (1970) .................................................... 7

*United States v. Virginia Electric Co.,*
365 U.S. 624 (1960) ................................................. 10

*Wayside Church v. Van Buren Cnty.,*
847 F.3d 812 (6th Cir. 2017) ..................................... 8

*Webb's Fabulous Pharmacies, Inc. v. Beckwith,*
449 U.S. 155 (1980) ............................................ 11, 12

## Constitutional Provisions

U.S. Const. amend. V ............................................ 2, 8

U.S. Const. amend. VIII ........................................... 13

**Statutes**

28 U.S.C. § 1254(1)......................................................1

42 U.S.C. § 1983..........................................................2

Mich. Comp. Laws § 211.7cc(1).................................4

Mich. Comp. Laws § 211.78a ...................................16

Mich. Comp. Laws § 211.78g(3)...............................16

Mich. Comp. Laws § 211.78h(1)...............................15

Mich. Comp. Laws § 211.78m(16)(a) .......................16

1

## PETITION FOR A WRIT OF CERTIORARI

Petitioner Michael Pung seeks a writ of certiorari to review the judgment of the United States Court of Appeals for the Sixth Circuit.

## OPINIONS BELOW

The unpublished opinion of the court of appeals is (App. 1a-22a) is available at 2025 U.S. App. LEXIS 2149. The district court's final opinion and order granting in part and denying in part summary judgment (App. 23a-46a) is published at 632 F. Supp. 3d 743 (E.D. Mich. 2022).

## JURISDICTION

The United States Court of Appeals for the Sixth Circuit entered judgment on January 28, 2025, App. 1a-22a, and denied a timely petition for rehearing on February 26, 2025, App. 64a-65a. On May 13, 2025, Justice Kavanaugh extended the time to petition for a writ of certiorari to and including July 25, 2025. This Court's jurisdiction is invoked under 28 U.S.C. § 1254(1).

## CONSTITUTIONAL AND STATUTORY PROVISION INVOLVED

The Fifth Amendment to the Constitution provides, in relevant part, "nor shall private property

2

be taken for public use without just compensation." U.S. Const. amend. V.

The Eighth Amendment to the Constitution provides, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

Section 1983 of Title 42, United States Code, 42 U.S.C. § 1983, in relevant part, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

3

## INTRODUCTION

When a taking occurs, "the amount recoverable" under the Fifth Amendment is "just compensation, *not inadequate compensation*." *Jacobs v. United States*, 290 U.S. 13, 16 (1933) (emphasis added). This Court has explained – repeatedly and consistently – that the measure of that "just compensation" is based on the "fair market value" of what was taken. Here, Isabella County took or dissolved the equity of an entire property after extracting the small tax "debt" owed. "Where private property is taken for public use, and there is a market price prevailing at the time and place of the taking, *that* price is just compensation." *United States v. New River Collieries Co.*, 262 U.S. 341, 344 (1923) (emphasis added).

But if Isabella County's actions do not constitute a taking, it deprived the Estate of so much equity that it became an "excessive fine" in violation of the Excessive Fines Clause of the Eighth Amendment. *Tyler v. Hennepin Cnty., Minn.*, 598 U.S. 631, 648 (2023) (Gorsuch and Jackson, JJ., concurring). Despite the blinders of lower courts, the exaction was a clear economic penalty imposed, i.e., a fine, to deter noncompliance with Michigan's tax laws. The Constitution has something to say about it: they cannot be excessive. *Id.* at 649-650. Here, the complaint pled such was unconstitutionally excessive.

With protections under both the Fifth and Eighth Amendments, *Tyler*'s majority and

4

concurrence demonstrates that the Constitution has serious limitations under the Fifth and Eighth Amendments that government defendants and lower courts must respect to protect homeowners from extreme deprivation of home equity effectuated by tax foreclosure schemes. Yet, the Sixth Circuit in this case gave short shrift otherwise by pointing to its own prior circuit precedents that weakly and barely analyzed these theories. Such are "mistakes" that this Court should instruct lower courts not to "emulate" ever again. *Id.* at 648. The Petition should be granted.

## STATEMENT OF THE CASE

In 1991, Timothy Scott Pung purchased his home located on St. Andrews Drive in Isabella County's Union Township for $125,000.00. In Michigan, a property owner may claim an exemption from certain local property taxes if the owner occupies the property as his or her principal residence. Mich. Comp. Laws § 211.7cc(1). This exemption is called the Principal Residence Exemption (PRE). Like nearly all Michigan property owners with a primary residence, Timothy filed for and his property was granted the PRE credit, thereby reducing the annual property tax bill.

Fourteen years later, Timothy unexpectedly passed away leaving a wife and two children without their father. In the years that followed, Patricia DePriest — the Union Township tax assessor — retroactively denied the PRE credit for the Pung property for the 2007-2011 tax years. After various

5

challenges before the Michigan Tax Tribunal, the PRE credit was ordered to be fully restored. For reasons that are irrelevant for this Petition, DePriest decided to and did, once again, revoke the property's PRE credit for the 2012 tax year. This led to a $2,241.93 unpaid tax bill for a tax that was never actually owed.

After more proceedings, the Michigan courts ultimately authorized the foreclosure over Pung's strenuous objections and challenges because DePriest failed to provide timely notice of the 2012 revocation and Michigan's various tribunals found themselves powerless to fix the error. Based upon the "unpaid" yet not owed $2,241.93 in tax resulting from the removal of the PRE credit, Isabella County initiated proceedings and effectuated foreclosure. And despite Pung's serious efforts, the Michigan courts would not halt Isabella County treasurer's demand for foreclosure on a tax never owed.

When the foreclosure concluded, the property was sold by Isabella County for only $76,008. From Isabella County's own annual property valuation determination, the Pung property was worth $194,400 at the time of foreclosure. After the tax auction, the property speculator who purchased the property immediately turned around and sold it for $195,000. So, at bottom, a nearly two hundred-thousand-dollar home was fire-sold for less than forty percent of its known value and Isabella County kept all the proceeds from the depressed sale.

6

Pung sued, alleging an uncompensated Fifth Amendment taking claim and an Eighth Amendment excessive fines claim. He pressed two interfacing arguments below. First, the Fifth Amendment requires an award of "just compensation" based on the "fair market value" of the equity property minus the taxes allegedly owed. In the alternative, Pung pressed that even if the takings remedy is limited to the retained proceeds from a tax foreclosure sale that exceed the delinquent property tax debt (known as "surplus proceeds"), the drastic deprivation of the fair market value of the property's equity inflicted by Isabella County's foreclosure processes amounted to an excessive fine in violation of the Eighth Amendment. Under either approach, the suffered damages equal the difference between the fair market value of the Pung property ($194,400.00) and the tax "debt" ($2,241.93). Before the award of interest, the damages inflicted, in Pung's view, were $192,158.07.

The district court initially dismissed the Eighth Amendment claim, but held that Pung did suffer a taking. App. 59a-62a. However, the district court ultimately held the Estate was only entitled to the "surplus" proceeds of $73,766.07.[1] App. 44a, 45a-46a.

---

[1] This figure is calculated by taking the price the property was sold for ($76,008.00) and subtracting the tax delinquency of ($2,241.93).

7

**Figure 1.**



*Fair Market Value* ($194,400.00)

*Seized Equity* ($192,158.07)

| $2K* (Tax) | **$73,766.07** (Surplus) | **$118,392.00** (Uncompensated Equity) |

*Auction Price*
($76,008.00)

*\* $2,241.93*

Based on the prior circuit precedents of *Freed v. Thomas*, 81 F.4th 655 (6th Cir. 2023) and *Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022), the Sixth Circuit affirmed. App. at 1a-22a. Other courts have reached contradictory conclusions in similar cases. *Polizzi v. Cnty. of Schoharie*, 720 F. Supp. 3d 141 (N.D.N.Y. 2024); *Coleman v. Dist. of Columbia*, 2016 U.S. Dist. LEXIS 200937, at \*5 (D.D.C. June 11, 2016) (recognizing a property interest in "home equity"). In Michigan, tens of thousands of foreclosure victims are being annually deprived of what the Constitution requires of Michigan counties and beyond.

## REASONS FOR GRANTING THE PETITION

Under the Fifth Amendment, an "owner is to be put in the same position monetarily as he would have occupied if his property had not been taken." *United States v. Reynolds*, 397 U.S. 14, 16 (1970). "It is the

8

owner's loss, not the taker's gain, which is the measure of the value of the property taken." *United States v. Causby*, 328 U.S. 256, 261 (1946). "Market value fairly determined is the normal measure of the recovery." *Id.*

Here, Isabella County actually took $192,158.07 in equity, not merely the surplus proceeds. And if Isabella County did not take it, it otherwise inflicted an excessive fine under the Eighth Amendment. The Sixth Circuit, and others, have rejected the proper scope of damages in these circumstances. This Court is invited to take up these questions regarding these equity "theft" cases. See *Wayside Church v. Van Buren Cnty.*, 847 F.3d 812, 823 (6th Cir. 2017) (Kethledge, J., dissenting) ("In some legal precincts that sort of behavior is called theft. But under the Michigan General Property Tax Act, apparently, that behavior is called tax collection.").

## I.    Fifth Amendment

The Fifth Amendment mandates "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The Takings Clause does not prohibit the taking of private property for public use but rather requires compensation when a taking occurs. *First English Evangelical Lutheran Church of Glendale v. Cnty. of L.A.*, 482 U.S. 304, 315 (1987). The failure to pay "just compensation" is generally what violates the Fifth Amendment.

9

In 2023, this Court in *Tyler* correctly observed that states may seize and sell private property to recover the amount owed in taxes. Taxes themselves are not a taking, but are properly understood as "a mandated contribution from individuals for the support of the government for which they receive compensation in the protection which government affords." 598 U.S. at 637. However, when there are funds remaining after a property is seized and sold to satisfy past due taxes, keeping "that remaining value" has been held to be an uncompensated appropriation. A "taxpayer must render unto Caesar what is Caesar's, *but no more*." *Id.* at 647 (emphasis added). Here, despite Pung's efforts to have the Michigan courts correct the tax collector's error regarding taxes never actually owed by the Estate, "Caesar" ended up being technically owed $2,241.93. Yet Caesar took far more.

This Petition asks this Court to reach the subsequent question that *Tyler* never reached. This Court explained that while the government had the power to sell Tyler's home to recover the unpaid property taxes, it could not use the tax debt to confiscate more property than was due. *Id.* at 693. But what happens if the government sells off the property for only a tiny fraction of its fair market value? In Pung's view, this is either a taking or alternatively an excessive fine. Pung sued on both theories.

10

"Just Compensation" under the Fifth Amendment consists of "the *total value* of the property when taken" plus "interest from that time." *Knick v. Twp. of Scott*, 588 U.S. 180, 190 (2019) (emphasis added). This Court has long employed the concept of "fair market value" to determine the appropriate loss. *United States v. 564.54 Acres of Land*, 441 U.S. 506, 510-511 (1979). The required payment of just compensation is "the full monetary equivalent of the property taken," *Almota Farmers Elevator & Whse Co. v. United States*, 409 U.S. 470, 473 (1973), plus interest from the time of the taking, *Seaboard Air Line R. Co. v. United States*, 261 U.S. 299, 305 (1923); *Jacobs,* 290 U.S. at 17. The owner of taken property is to be put in the same position monetarily as he would have occupied had his property had not been taken. *Almota Farmers*, 409 U.S. at 473-474; *Albert Hanson Lumber Co. v. United States*, 261 U.S. 581, 586 (1923); *United States v. Virginia Electric Co.*, 365 U.S. 624, 633 (1960). Taking governments must pay "the full and perfect equivalent in money of the property taken." *United States v. Miller*, 317 U.S. 369, 373 (1943).

Pung is not alone in his assertions. Michigan Supreme Court Justice David Viviano's concurrence in *Rafaeli* powerfully underscores that fair market value is the appropriate measure of damages for unconstitutional takings in tax foreclosure cases. Even when the government returns surplus proceeds from foreclosure sales beyond the delinquent taxes owed, it still deprives property owners of their *full*

11

rightful equity. "The property right that has been taken from the plaintiffs is their equity in their respective properties and not any independent interest in the surplus proceeds from the tax-foreclosure sale." *Rafaeli, LLC v. Oakland Cnty.*, 952 N.W.2d 434, 486 (Mich. 2020) (Viviano, J., concurring). In other words, "the property right at issue here [i]s the taxpayer's *equity* in the property," not the surplus following a fire-sale auction. *Id.* at 481. Justice Viviano correctly emphasizes that a fair market value approach provides the just and equitable standard to compensate property owners for the full extent of their loss, ensuring that the government does not profit at the expense of vulnerable citizens.

Nevertheless, the Sixth Circuit has eschewed this clear-cut, black-letter principle. In *Freed*, the Sixth Circuit held a former property owner whose real property is worth many multiples of the outstanding tax delinquency is *only* "entitled to the amount of the [auction] sale above his debt and no more." *Freed*, 81 F.4th at 659. The Sixth Circuit's rationale never explains or attempts to logically characterize what legally happened to the extreme amount of missing equity, i.e., being the difference between the fair market value and the auction price. "Equity" is the value of property that exceeds encumbering liens. *Crane v. Commissioner*, 331 U.S. 1, 7 (1947). And equity cannot simply vanish into the ether. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980) (no transformation "by ipse dixit"). A

12

property interest does not simply "vanish[] into thin air" at the government's convenience. *Armstrong v. United* States, 364 U.S. 40, 44-45 (1960). Government cannot otherwise use legislation to "transform private property into public property without compensation." *Webb's*, 449 U.S. at 164. Yet *Freed* does not logically explain where the now missing equity went or if (or how) it was lawfully transformed.

While Isabella County may argue that auction sales ensure efficient tax collection, administrative convenience cannot justify taking $118,000 in equity without just compensation. See *Webb's*, 449 U.S. at 164 (government cannot transform private property into public property without compensation).

The overarching question, when properly understood, is what has *the owner lost*, not what has the taker gained." *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 236 (2003) (quoting *Boston Chamber of Commerce v. Boston*, 217 U.S. 189, 195 (1910)). Here, Pung's property, undisputedly worth $194,400, was sold for less than forty percent of its fair market value ($76,008). After paying the tax "debt" ($2,241.93), neither Isabella County nor the Sixth Circuit can explain what happened to the $118,000 in equity. Pung can—it was taken without just compensation. The Takings Clause can and should provide a full remedy for Pung. An owner can "proceed directly to federal court under 42 U.S.C. § 1983" when not provided the "total value of the property when taken, plus interest from th[e] time" of the take.

13

*Knick*, 588 U.S. at 190-191. The Sixth Circuit (and others) have repeatedly erred when insufficiently awarding "inadequate compensation" rather than "*just* compensation." *Jacobs*, 290 U.S. at 16 (emphasis added).

## II.    Eighth Amendment

The Eighth Amendment provides that "excessive bail shall not be required, *nor excessive fines imposed*, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Due Process Clause of the Fourteenth Amendment "makes the Eighth Amendment's prohibition against excessive fines... applicable to the State." *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 433-434 (2001); *Timbs v. Indiana*, 586 U.S. 146, 154 (2019).[2]

While *Tyler* was rendered solely as a Fifth Amendment taking, Justices Jackson and Gorsuch's concurrence explained that the trial-level *Tyler* decision dismissing the Eighth Amendment claim (just as the trial court did against Pung here) "contains mistakes future lower courts should not be

---

[2] For large parts of our legal history, the Eighth Amendment held an indeterminate role beyond the criminal law. See *Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 263 (1989) ("To decide the instant case, however, we need not go so far as to hold that the Excessive Fines Clause applies just to criminal cases."). But starting in 1993 with *Austin*, the protections of the "Excessive Fines Clause" were found and been expanded upon.

14

quick to emulate." *Tyler*, 598 U.S. at 648 (Gorsuch, J., concurring). The Sixth Circuit emulated that same mistake and "the Constitution has something to say about" that. *Id.* at 650 (Gorsuch, J., concurring).

From the Magna Carta through today, "a Freeman shall not be amerced for a small fault." *Timbs*, 586 U.S. at 151. "The protection against excessive fines has been a constant shield throughout Anglo-American history." *Id.* at 153. "Protection against excessive punitive economic sanctions secured by the Clause is... both fundamental to our scheme of ordered liberty and deeply rooted in this Nation's history and tradition." *Id.* at 154. It serves as a hard barrier against "us[ing] the civil courts to extract large payments or forfeitures for the purpose of raising revenue or disabling some individual." See *Browning-Ferris*, 492 U.S. at 275.

This expansive role of the Excessive Fines Clause formally took root in 1993 when *Austin* expanded the applicability of the constitutional-based "excessive fines" limitation to encompass "in kind punishments" like *in-rem* civil forfeitures. *Austin* confirmed a constitutional limit on the government's power to exact punishment. *Austin v. United States*, 509 U.S. 602, 610 (1993). Forfeitures are punishments and "[e]conomic penalties imposed to deter willful noncompliance with the law are fines by any other name." *Tyler*, 598 U.S. at 650 (Gorsuch, J.,

15

concurring).[3] Today, the "thing exacted" as punishment does not matter if cash or an asset "in kind" to properly be within the scope of the Clause's protection. Constitutional protection now "cuts across the division between the civil and the criminal law" and is now broadly meant "to limit the government's power *to punish*." *Austin,* 509 U.S. at 609, 610 (emphasis added). And this Court has left no doubt— a "statutory *in-rem* forfeiture" (which is what Michigan uses[4]) "imposes punishment." *Id.* at 614. Thus, post-*Austin*, a statutory civil *in-rem* forfeiture, like the type effectuated here, is a "fine" within the meaning of the Excessive Fines Clause and thusly is subject to a challenge on excessiveness grounds.[5]

The second step inquires whether the statutory civil *in-rem* forfeiture punishment is excessive, i.e.,

---

[3] It also perversely provides backdoor revenue for municipalities, which gives governments an abhorrent incentive to ever increase these punishments (or even attempt to rationalize them as not being punishments).

[4] See *Keweenaw Bay Outfitters v. Dep't of Treasury*, 651 N.W.2d 138, 142 (Mich. Ct. App. 2002) ("In Michigan, in rem proceedings include foreclosures for failure to pay taxes" citing *Smith v. Cliffs on the Bay Condominium Ass'n (On Remand)*, 626 N.W.2d 905, 906 (Mich. Ct. App. 2001)); Mich. Comp. Laws § 211.78h(1).

[5] The purpose of "fire sale" auctions is to hurriedly raise revenue from an asset received for virtually nothing. Auctioning governments have little interest in maximizing the securitization of the remaining equity—the very purpose for which the precursors to the excessive fines clause sought to remedy against the former kings of Europe.

16

"grossly disproportional." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). The touchstone "is the principle of proportionality—the amount of the forfeiture must bear *some relationship* to the gravity of the offense that it is designed to punish." *Id.* (emphasis added). Pung asserts (and pled) this required proportionality is totally lacking.

The concurrence in *Tyler* supports this theory of relief (which the *Tyler* majority never disavowed). The Eighth Amendment's "Excessive Fines Clause applies to *any* statutory scheme that 'serv[es] in part to punish.'" *Tyler*, 598 U.S. at 648 (Gorsuch, J., concurring) (emphasis in original). "So long as the law 'cannot fairly be said solely to serve a *remedial* purpose,' the Excessive Fines Clause applies." *Id.* (emphasis in original). The destruction of tens of thousands of dollars is such a form of punishment.

Here, the Estate had approximately $118,000 in equity taken for a tax "debt" (not actually owed) and such is both punitive and fails to have a sufficient relationship to the gravity of the non-payment of a small tax. Imposing the loss of this much equity above and beyond the total tax delinquency[6] "does not serve"

---

[6] When an Isabella County property owner fails to pay property tax, regardless of the amount or reason, the county's treasurer, acting as the voluntary FGU (foreclosing governmental unit) on behalf of Isabella County, gets to impose penalties atop of the unpaid tax debt, and also adds two additional fees of $175.00 and $15.00. Mich. Comp. Laws § 211.78a; Mich. Comp. Laws § 211.78g(3). As FGU, Pickens also

17

*any* "remedial purpose of compensating the Government for a loss." *Bajakajian*, 524 U.S. at 329. Thus, Pung pleads, as grossly disproportionate and excessive punishment, the seizing and destroying of *the remaining equity* in the Estate's equity assuming the taking remedy stands unchanged—$97,690.94 in equity. Such forfeiture is a grossly disproportional punitive fine for not timely paying of $2,241.93 (i.e., the amount of the PRE and any penalties thereon), which in this case, was not ever actually due. Such is easily and plausibly in violation of the Eighth Amendment.

The Sixth Circuit below erroneously affirmed the rejection of the theory at the pleadings stage. In barring the claim as a matter of law, it simply pointed to its *Freed* decision and *Freed* deferred to its prior *Hall* decision. Yet *Hall* just summarily affirmed, without any substantive analysis, the underlying district court's dismissal "on the ground that the GPTA is not punitive." *Freed*, 81 F.4th at 659; *Hall*, 51 F.4th at 196-197 (adopting district court's reasoning as the panel's own). That is both wrongly decided and of rather thin reed upon which to base

---

imposes all costs for the foreclosure process. Add all these amounts together, it establishes what was then "minimum bid" (see Mich. Comp. Laws § 211.78m(16)(a)) for the sale of the property at the annual tax auction. That minimum bid is remedial. But still, Isabella County caused destruction and forfeiture of far, far more. That is disproportionately punitive and thusly unconstitutionally excessive.

18

such an important principle of law. In Pung's view, it was too thin and wrongly rendered.

*Austin* was crystal clear — "a civil sanction that cannot fairly be said solely to serve a remedial purpose but rather can only be explained as also serving either retributive or deterrent purposes, *is punishment*." *Austin,* 509 U.S. at 610 (emphasis added). More pointedly, "statutory in rem forfeiture imposes punishment" and "serves 'punitive and deterrent purposes.'" *Id.* at 614, 618. And given the punishment against the Estate here is so gigantic compared to the non-payment of a tax that was never actually owed is grossly excessive. The lower courts should have permitted the claim to proceed forward. *Tyler*, 598 U.S. at 648-650 (Gorsuch, J., concurring).

## III.    An Ideal Case

This case offers an ideal vehicle for resolving the questions presented. It presents a critical opportunity to finally address significant constitutional questions regarding the scope of protections under the Fifth and Eighth Amendments in the context of tax foreclosure schemes that deprive homeowners of substantial property equity. Numerous  reasons underscore why certiorari is warranted:

**1.    The Sixth Circuit's Decision Conflicts with this Court's Precedent on Just Compensation**: The Sixth Circuit's decision below, relying on *Freed* and *Hall*, contravenes this Court's

19

long-standing precedent that "just compensation" under the Fifth Amendment is measured by the fair market value of the property taken, not the artificially depressed auction price. By limiting compensation to only surplus proceeds from a foreclosure sale rather than the property's fair market value, the Sixth Circuit endorses "inadequate compensation" in defiance of *Jacobs.* 290 U.S. at 16. This case allows the Court to clarify that local governments may not and cannot evade their constitutional obligation to pay the "full monetary equivalent" of the property taken, including the owner's equity, as expressly confirmed by *Knick.*

**2.    Circuit Split and Divergent Lower Court Approaches**: The Sixth Circuit's approach conflicts with decisions from other courts that recognize the constitutional infirmity of retaining surplus equity in tax foreclosures. For example, *Polizzi* held that such practices violate the Takings Clause by failing to compensate for the fair market value of the property. This divergence among lower courts creates uncertainty and inconsistent protections for property owners nationwide. Granting certiorari would resolve this split and provide uniform guidance on the constitutional standards governing tax foreclosure proceeds.

**3.    Unresolved Questions from *Tyler v. Hennepin County***: In *Tyler*, this Court held that retaining surplus proceeds from a tax foreclosure sale constitutes a taking, but it did not address whether

20

compensation should be based on fair market value when the sale price is significantly below that value. This case squarely presents that unresolved question, as Isabella County sold a $194,400 property for $76,008, pocketing the proceeds while ignoring the $118,000 in lost equity. Resolving this issue would correctly extend *Tyler*'s protections and ensure that homeowners are not deprived of their property's full value through artificially low auction sales.

4.      **Eighth Amendment Excessive Fines Clause Implications**: The Sixth Circuit's dismissal of Pung's Eighth Amendment claim, based on weak and flawed precedents in *Freed* and *Hall*, overlooks the punitive nature of Michigan's tax foreclosure scheme. As noted in the *Tyler* concurrence by Justices Gorsuch and Jackson, such schemes impose "economic penalties" that serve as "fines" under *Austin*. Forfeiting $118,000 in equity for a $2,241.93 tax debt — never actually owed — is "grossly disproportional" to the offense, violating the Excessive Fines Clause. This case offers the Court a perfect chance to correct lower courts' misapplication of the Clause and affirm its applicability to in-rem forfeitures, as suggested by the concurrence in *Tyler,* 598 U.S. at 648-650 (Gorsuch, J., concurring).

5.      **Nationwide Significance and Recurring Harm**: Michigan's tax foreclosure practices, which affect tens of thousands of homeowners annually, exemplify a broader issue of "equity theft" across multiple states. These schemes

21

incentivize municipalities to maximize revenue by seizing and selling properties at depressed prices, leaving owners with minimal or no compensation for their equity. This Court's intervention is necessary to halt this widespread deprivation of constitutional rights and to establish a clear standard that protects property owners from such predatory practices. Government cries of administrative convenience never justifies wholesale constitutional violations.

6.      **Ideal Vehicle for Review**: This case is an ideal vehicle for resolving these questions. The facts are undisputed: the property's fair market value was $194,400, it was sold for $76,008, and the tax debt was $2,241.93. The legal issues are cleanly presented with well-developed arguments on both the Fifth and Eighth Amendment claims. The Sixth Circuit's blind reliance on flawed precedents and the failure to engage with *Tyler*'s implications provide a clear basis for this Court's intervention.

## IV.    Certiorari is Warranted

Granting certiorari allows the Court to properly reaffirm the constitutional protections against uncompensated takings and excessive fines, ensuring that former property owners are not stripped of their property's *full* value in equity through government overreach. This Court's intervention is essential to safeguard the fundamental rights to just compensation and protection against excessive fines, ensuring that homeowners are not deprived of their

22

property's full value through predatory foreclosure schemes like the one operated in Isabella County, Michigan and others elsewhere.

## CONCLUSION

For all the foregoing reasons, this Court should grant the petition for a writ of certiorari. In the alternative, the Court should summarily reverse the decision below.

Respectfully submitted,

PHILIP L. ELLISON
  *Counsel of Record*
OUTSIDE LEGAL COUNSEL PLC
*530 West Saginaw St*
*Hemlock, MI 48626*
*(989) 642-0055*
*pellison@olcplc.com*

July 2025