## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DANIELLE READO** | * | **CIVIL ACTION NO. 2:24-cv-2451** |
| | * | |
| | * | |
| **VERSUS** | * | **JUDGE WILLIAM J. CRAIN** |
| | * | |
| | * | |
| **CITY OF NEW ORLEANS AND** | * | **MAGISTRATE JANIS VAN** |
| **SERPIL PROPERTIES LLC** | * | **MEERVELD** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY RESPONSES FROM CITY OF NEW ORLEANS

**May It Please the Court:**

Plaintiff, Danielle Reado, respectfully submits this Memorandum in Support of her Motion to Compel Discovery Responses from City of New Orleans.

### CASE BACKGROUND

This litigation arises from an adjudication sale in which Defendant, City of New Orleans (the "City"), purported to sell Plaintiff's home at 4715 Laine Avenue in New Orleans, Louisiana (the "Property") to Defendant Serpil Properties LLC ("Serpil") to satisfy a property tax delinquency. (R. Doc. 20). Plaintiff seeks annulment of the adjudication sale, and the tax sale that underpins it, on the grounds that the City conducted those proceedings without providing sufficient notice to Plaintiff and her predecessor in title, in violation of the Due Process Clause of the Fourteenth Amendment and various provisions of Louisiana law. Id. In the alternative, and only if the Court determines that the City's sale of the Property to Serpil was valid, Plaintiff seeks just compensation under the Fifth Amendment for the taking of the equity in her home. Id.

1

**DISCOVERY BACKGROUND**

On June 23, 2025, Plaintiff served *Interrogatories to City of New Orleans* and *Requests for Production to City of New Orleans* on the City by email (the "Discovery Requests"). Ex. 1; see also Ex. 2 (Interrogatories); Ex. 3 (Requests for Production). The Discovery Requests consisted of fifteen (15) interrogatories and twenty-seven (27) requests for production.

On July 23, 2025, the City served its Responses and Objections to Plaintiff's Discovery Requests (the "Discovery Responses"). Ex. 4.

After reviewing the Discovery Responses, Plaintiff concluded that numerous responses were deficient. Some responses contained objections that Plaintiff believed lacked merit, while others failed to fully answer the requests, failed to produce responsive documents, or otherwise provided incomplete information. Accordingly, on August 15, 2025, Plaintiff requested a Rule 37 conference concerning discovery issues. Ex. 5. The conference was scheduled for August 22, 2025. Ex. 5.

On August 20, 2025, in advance of the conference, Plaintiff's counsel provided the City with a detailed deficiency letter identifying the specific responses Plaintiff believed required supplementation and explaining the basis for Plaintiff's position. Ex. 6.

The parties conducted the Rule 37 conference as scheduled and discussed each of the deficiencies identified in Plaintiff's letter. As a result of those discussions, the parties were able to narrow certain disputes, with the City agreeing to provide supplemental responses and/or additional documents. With respect to others, the City maintained its objections and declined to provide the requested information.

On August 25, 2025, Plaintiff's counsel circulated a letter memorializing the parties' discussions. Ex. 7. Counsel for the City reviewed that letter and requested several clarifications.

Id; Ex. 8. After incorporating the City's requested revisions, Plaintiff's counsel circulated a final version of the memorialization letter on August 26, 2025 (the "Memorialization Letter"). Ex. 9; Ex. 10. The Memorialization Letter therefore reflects not merely Plaintiff's understanding of the conference, but the parties' agreed characterization of the issues discussed and the actions the City agreed to take.

As reflected in the Memorialization Letter, the City agreed to provide updated responses and additional documents responsive to several of the Discovery Requests by September 19, 2025. Ex. 10. The Memorialization Letter also reflects the requests as to which the City maintained its objections and declined to supplement. Ex. 10.

On September 19, 2025, counsel for the City requested an extension until September 26, 2025 to provide the agreed supplemental responses and additional documents. Ex. 11. Plaintiff consented to that request. Ex. 11. Despite obtaining the extension, the City failed to provide any of the promised supplemental responses or additional document production.

On April 28, 2026, Plaintiff requested a status update concerning the outstanding supplementation and document production. Ex. 12. Despite that inquiry, the City has never provided the supplemental responses and additional documents contemplated by the Memorialization Letter. Likewise, other deficiencies identified in Plaintiff's August 20, 2025 letter remain unresolved.

Accordingly, this Motion seeks relief with respect to both categories of outstanding issues: (1) requests for which the City agreed to provide supplemental responses or additional documents but failed to do so; and (2) requests for which the City maintained objections that Plaintiff contends are improper.

**LEGAL STANDARD**

When a party fails to provide answers or produce documents in response to discovery requests, the Federal Rules of Civil Procedure permit the party seeking discovery to "move for an order compelling an answer, designation, production, or inspection." See Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv). Evasive or incomplete answers and responses are "treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

The party filing a motion to compel bears the burden of establishing that the information requested is within the scope of discovery. See *Leonard v. LeBlanc*, No. 5:13-cv-2717, R. Doc. 33 at 3 (W.D. La. Feb. 6, 2015). Information is discoverable when it is "relevant to any party's claim or defense" and "proportional to the needs of the case." See Fed. R. Civ. P. 26(b)(1). "Relevant information encompasses 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *LeBlanc*, No. 5:13-cv-2717, R. Doc. 33 at 2. (internal citations omitted). In determining whether a discovery request is proportional to the needs of a case, courts consider the importance of the issues at stake, the amount in controversy, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. See Fed. R. Civ. P. 26(b)(1).

"Once a party moving to compel discovery establishes that the materials and information it seeks are relevant or will lead to the discovery of admissible evidence, the burden rests upon the party resisting discovery to substantiate its objections." *LeBlanc*, No. 5:13-cv-2717, R. Doc. 33 at 3. (internal citations omitted). The party resisting discovery may not rely on conclusory objections, but instead must demonstrate specifically how the requested discovery is improper, unduly burdensome, or otherwise outside the scope of permissible discovery. See *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

## <u>ARGUMENT</u>

**A. The City Should Be Compelled to Supplement Interrogatory No. 1.**

Interrogatory No. 1 requested identification of all persons who provided responses or information used to respond to Plaintiff's discovery requests. Ex. 2.

The City responded only that its responses were prepared by counsel in "privileged consultation" with members of the City Attorney's Office and employees of Archon Information Systems, LLC. Ex. 4. The City did not identify the individuals with whom it consulted or who provided the responsive information. Ex. 4. Accordingly, the response is incomplete.

The identities of the persons who supplied information used in preparing the City's discovery responses are relevant because the City expressly relied upon information obtained from those individuals in formulating its responses to Plaintiff's discovery requests. Plaintiff is entitled to know whose knowledge and information the City relied upon in answering discovery. Moreover, those individuals are likely fact witnesses concerning the matters addressed in the City's responses. Their identities are therefore relevant to the preparation and presentation of Plaintiff's case at trial.

To the extent the City contends that the identities of the members of the City Attorney's Office and employees of Archon Information Systems, LLC who supplied information used in preparing the City's discovery responses are protected by the attorney-client privilege, that contention lacks merit. The attorney-client privilege protects confidential communications, not underlying facts or the identities of persons possessing knowledge of those facts. See *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."); *Taylor Lohmeyer Law Firm, P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020) ("as another general rule, client identities. . . are not protected as privileged.").

Here, Plaintiff does not seek the substance of any communication between counsel and the individuals consulted in preparing the City's discovery responses. Plaintiff seeks only the identities of the persons who supplied the information reflected in those responses. Such information is not privileged.

Indeed, during the Rule 37 conference, the City agreed to update its response to identify the persons that provided information used in responding to Plaintiff's discovery requests. Ex. 10. The City thereafter failed to do so.

The Court should therefore compel the City to identify the individuals who provided information used in preparing its discovery responses.

**B. The City Should Be Compelled to Supplement Interrogatory Nos. 6 Through 9.**

Interrogatory Nos. 6 through 9 sought, among other things, the identities of the individuals and entities involved in identifying tax sale parties and providing notice concerning the Tax Sale and Adjudication Sale, the sources they consulted in performing those tasks, and the efforts undertaken in performing those tasks. Ex. 2.

In response, the City objected that the Interrogatories were vague, overbroad, and to the extent that it sought information concerning persons other than Plaintiff, were not relevant or likely to the lead to the discovery of admissible evidence. Thereafter the City merely states that its efforts complied with applicable law, discusses Plaintiff's alleged knowledge of the Tax Sale and Adjudication Sale, and generally invoked Rule 33(d) to refer Plaintiff to documents produced. Ex. 4.

During the Rule 37 conference, Plaintiff agreed that the City's document references were sufficient to identify the records upon which the City relied and therefore does not seek additional relief concerning the City's invocation of Rule 33(d). Ex. 10. However, the City's responses

remain incomplete because they do not identify the individuals and entities who performed the notice and tax sale party identification efforts that are the subject of the Interrogatories.

The identities of the individuals and entities who identified the parties that needed to receive notice and who performed the noticing work are directly relevant to Plaintiff's due process and inadequate notice claims. Those individuals are fact witnesses with knowledge concerning the City's efforts to identify interested parties and provide notice prior to the Tax Sale and Adjudication Sale.

The City's objections to the disclosure are meritless. There is nothing vague about an interrogatory that asks the respondent for "the name of the person or entity that made the effort, and the employer of the person that made the effort." The "effort" is explicitly described in the Interrogatories at issue as "efforts that You made to provide notice. . . to each tax sale party" and "efforts that You made to identify the name and address of each tax sale party to whom notice. . . should be provided."

There is also nothing overbroad about the requests. Interrogatory Nos. 6 through 9 do not seek information concerning all tax sales, all adjudication sales, or all notice efforts undertaken by the City. Rather, they are limited to the City's efforts to identify tax sale parties and provide notice concerning the Property and the Tax Sale and Adjudication Sale at issue in this litigation. The requests therefore seek a discrete category of information directly related to Plaintiff's claims and are narrowly tailored to the facts of this case.

The City's objection that the requested information is irrelevant to the extent it concerns persons other than Plaintiff is likewise without merit. Plaintiff alleges that the City failed to provide constitutionally adequate notice not only to Plaintiff, but also to Plaintiff's predecessor in title before conducting the Tax Sale. The City challenged Plaintiff's standing to assert such a claim.

7

This Court rejected that argument, holding that "even though plaintiff was not the tax debtor or property owner at the time of the sale, as the current interest holder in the property, she has standing to bring the due process claim." (R. Doc. 47 at 19). Accordingly, the City's efforts to identify and provide notice to Plaintiff's predecessor in title remain at issue in this litigation. The identities of the individuals and entities who participated in those efforts, and who possess knowledge concerning them, are therefore plainly relevant.

During the Rule 37 conference, the City agreed to supplement its responses to identify the entities involved in the notice and identification efforts, describe their roles, and, to the extent possible, identify the individuals who carried out those efforts within the entities. Ex. 10. Nevertheless, the City never supplemented its responses.

The Court should therefore compel the City to provide complete responses to Interrogatory Nos. 6 through 9 identifying the persons and entities that performed the relevant notice and tax sale party identification efforts.

## C. The City Should Be Compelled to Supplement Interrogatory No. 13.

Interrogatory No. 13 requested that the City identify: (1) the last date on which the Property could have been redeemed under La. R.S. 47:2246; (2) the total amount that would have been required to redeem the Property on that date; (3) each component of that amount and the amount attributable to each component; and (4) if the redemption amount differed from the $29,529.01 amount displayed on the CivicSource auction page, the reason for the discrepancy. Ex. 2.

The City did not answer the Interrogatory. Instead, it objected that the Interrogatory assumes hypothetical facts, calls for a legal conclusion, and seeks information already in Plaintiff's possession. Subject to those objections, the City quoted Louisiana statutes and generally referred Plaintiff to produced documents.

The information sought by Interrogatory No. 13 is directly relevant to Plaintiff's claims. Plaintiff alleges that the Adjudication Sale resulted in the taking of substantial equity in the Property. A principal issue in Plaintiff's takings claim is the amount of debt that was chargeable against the Property as of the date that Plaintiff's ownership rights were extinguished. That figure bears directly upon the existence and extent of any surplus value associated with the Property.

The amount that the City would have accepted to redeem the Property on the final day redemption was available is highly probative of that figure because Louisiana law requires payment of all taxes, interest, penalties, and collection-related costs necessary to redeem the property. See La. R.S. 47:2243 (2023); La. R.S. 47:2247 (2023). The final date on which the Property could have been redeemed is likewise important because, at a minimum, interest would have continued to accrue until that date. See La. R.S. 47:2127 (2023); La. R.S. 47:2243 (2023).

Likewise, the component parts of the redemption amount are relevant. Plaintiff is entitled to know the specific taxes, interest, penalties, costs, and other charges that the City contends were owed because those items collectively make up the debt that the City claims was chargeable against the Property.

Any discrepancy between the redemption amount and figures displayed on the auction webpage maintained by the City's agent is also relevant. If the City's position regarding the amount owed differs from figures that the City displayed to the public in connection with the Adjudication Sale, Plaintiff is entitled to know why. Such information bears directly upon the amount and composition of the debt claimed by the City and, therefore, upon the existence and extent of any surplus value associated with the Property.

Accordingly, all of the information that Plaintiff seeks in Interrogatory No. 13 is highly relevant to Plaintiff's takings claim.

9

The City's objections that the Interrogatory assumes hypothetical facts and calls for a legal conclusion are without merit. Federal Rule of Civil Procedure 33(a)(2) expressly provides that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2). Interrogatory No. 13 seeks the City's contentions regarding the final date on which the Property could have been redeemed, the redemption amount applicable on that date, the components of that amount, and the basis for any discrepancy between that amount and figures displayed on the City's auction webpage. Such contention interrogatories are expressly authorized by Rule 33.

The City's objection that the requested information is already in Plaintiff's possession is likewise without merit. The City has not identified any document in Plaintiff's possession that provides the information requested by the Interrogatory. The redemption amount consists of multiple components, including the underlying tax debt, statutory penalties, accrued interest, and collection-related costs. See La. R.S. 47:2243 (2023); 47:2247 (2023). Because interest and costs continue to accrue over time, redemption calculations generated prior to the Adjudication Sale that the City may contend were in Plaintiff's possession do not necessarily establish the redemption amount at the time of the sale. Moreover, the redemption calculations produced by the City do not itemize all components of the amount claimed to be due, which is information expressly sought by the Interrogatory.

The City's objection that Plaintiff's request for an explanation of any discrepancy between the redemption amount and the $29,529.01 figure displayed on the CivicSource website is vague and ambiguous is likewise without merit. The $29,529.01 figure appeared on the Adjudication Sale website maintained by the City's agent under the heading "Taxes," which suggests that it reflects the indebtedness that the City sought to collect through the Property's sale. Interrogatory

10

No. 13 simply requests that the City explain any difference between that figure and the redemption amount that the City contends was applicable to the Property. There is nothing vague or ambiguous about that request. If the figures are different, the City should be able to explain the reason for the discrepancy.

During the Rule 37 conference, the City agreed that it would supplement its response to identify the redemption amount and provide an itemization of that amount to the extent such information was available. Ex. 10. The City maintained its objections to identifying the final date on which the Property could have been redeemed. Id. Despite its agreement to supplement, no supplemental response was ever provided.

The Court should compel the City to provide a complete response to Interrogatory No. 13 identifying the final date on which the Property could have been redeemed, the redemption amount applicable on that date, the components of that amount, and the basis for any discrepancy between that amount and the amount displayed on the CivicSource auction page.

**D. The City Should Be Compelled to Supplement Interrogatory No. 14.**

Interrogatory No. 14 requested that the City identify the person who prepared the Non-Warranty Cash Sale by which the City purported to transfer the Property to Serpil and explain how the sale price of $60,753.75 that is stated therein was determined. Ex. 2.

The City objected that the term "prepared" is vague and ambiguous and that the identity of the preparer is irrelevant. The City further objected that the request for an explanation of the $60,753.75 sale price is vague and ambiguous. Subject to those objections, the City stated only that the Non-Warranty Cash Sale "speaks for itself and forms the best evidence of its contents." Ex. 4.

11

The City's objections are meritless. There is nothing vague or ambiguous about asking who prepared a document. At a minimum, the City is capable of identifying the individual or entity responsible for drafting, generating, or causing the preparation of the Non-Warranty Cash Sale. If multiple persons participated in that process, the City may identify them and describe their respective roles. Instead, the City chose not to answer the Interrogatory at all.

The City's relevance objection is likewise without merit. The Non-Warranty Cash Sale is the instrument by which the City contends title to the Property was transferred to Serpil. The person(s) that prepared the document are fact witnesses and their identity is therefore directly relevant to the transaction at issue in this litigation.

The City's objection to explaining the stated sale price of $60,753.75 is equally unfounded. The Interrogatory plainly asks the City to explain how the figure appearing in its own deed was determined. There is nothing vague or ambiguous about that request.

Moreover, the requested information is directly relevant to Plaintiff's claims. The Property was sold as part of a bundled two-property auction that generated a winning bid of approximately $121,800. Nevertheless, the Non-Warranty Cash Sale transferring the Property to Serpil recites a sale price of only $60,753.75. How this figure was derived is not apparent. It is close to one-half of the winning bid amount, but it is not exactly one-half. This Court held that Plaintiff's takings claim is limited to the actual sale price less the tax debt that was owed. (R. Doc. 47 at 24). Accordingly, Plaintiff is entitled to know how the City arrived at the $60,753.75 figure, what methodology was used to allocate the winning bid among the properties included in the auction, and who made that determination.

During the Rule 37 conference, the City agreed to investigate these issues and supplement its response. Ex. 10. Despite that agreement, no supplementation was ever provided.

12

Accordingly, the Court should compel the City to identify those who prepared the Non-Warranty Cash Sale and explain how the stated sale price of $60,753.75 was determined.

**E. The City Should Be Compelled to Produce Documents Responsive to Request for Production No. 19.**

Request for Production No. 19 sought deposition transcripts from other litigation involving claims arising under Tyler v. Hennepin County. Ex. 3.

The City objected that the requested documents are irrelevant and produced no responsive documents. Ex. 4.

The City's relevance objection is without merit. This Court has already held that Plaintiff may pursue a Fifth Amendment takings claim arising from the Adjudication Sale under the Tyler v. Hennepin County case. (R. Doc. 47 at 22-24). Deposition testimony given by City employees, agents, or representatives in other litigation involving Tyler-based claims may reveal information concerning the City's policies, practices, procedures, and positions regarding the retention of surplus value following tax-related property sales. Such testimony is relevant to Plaintiff's takings claim and may be used in preparing for trial and, where otherwise admissible, at trial itself.

During the Rule 37 conference, counsel for the City declined to withdraw the objection but represented that he was not aware of any responsive transcripts. Ex. 10. That representation does not establish that a reasonable search was conducted or that no responsive transcripts exist. Nor does it address whether responsive transcripts may have come into the City's possession after the Rule 37 conference.

Accordingly, the Court should compel the City to supplement its response by stating whether any responsive transcripts are within its possession, custody, or control and, if so, to produce them.

**F. The City Should Be Compelled to Produce Documents Responsive to Request for Production No. 20.**

Request for Production No. 20 sought contracts, agreements, and similar documents between the City and any vendor involved in the Tax Sale, Adjudication Sale, or Property. Ex. 3.

The City objected that the requested documents are irrelevant. Ex. 4.

The objection is meritless. This litigation concerns a Tax Sale and Adjudication Sale that were conducted by the City and third-party agents acting on the City's behalf. The City has admitted "that it contracted with Archon Information Systems, L.L.C. to assist the City in conducting the auction that resulted in the Adjudication Sale." Ex. 4 at 14. Contracts governing that relationship, and any other relationships between the City and third parties that provided services in connection with the Tax Sale or Adjudication Sale, are directly relevant to Plaintiff's claims and the City's defenses.

Such agreements may identify the entities responsible for providing notice, maintaining records, calculating amounts allegedly owed in connection with the Property, conducting auctions, preparing documents associated with the transfer of title, and performing other functions central to the challenged conduct. The agreements may also define the duties delegated to those entities, establish the procedures governing their conduct, reveal the extent of the City's supervision and control over their activities, identify records they were required to create or maintain, and clarify which persons and entities possess knowledge concerning the matters at issue in this litigation.

During the Rule 37 conference, counsel for the City agreed that responsive agreements would be produced, subject to any confidentiality concerns or other applicable protections the City believed applied. Ex. 10. Despite this agreement to supplement, no responsive contracts or agreements were produced.

Plaintiff does not concede that any basis exists for withholding responsive contracts or agreements. The Court should compel the City to produce all contracts, agreements, and similar documents responsive to Request for Production No. 20.

**G. The City Should Be Compelled to Produce Documents Responsive to Request for Production No. 21.**

Request for Production No. 21 sought screenshots, screen captures, and similar records reflecting information maintained within computer systems used in connection with the Tax Sale and Adjudication Sale. Ex. 3.

In response, the City produced two screenshots depicting CivicSource auction webpages related to the Property but did not produce a screenshot of the CivicSource webpage depicting the auction that resulted in the Adjudication Sale. Ex. 4.

The requested screenshot is directly relevant to Plaintiff's claims. The Adjudication Sale is one of the central events at issue in this litigation. CivicSource auction webpages contain substantial information concerning the auctions they conduct, including the final bid price, property descriptions, purported taxes and costs associated with the Property, the manner in which the Property was offered for sale, the information available to bidders, and the relationship between the Property and any other properties included in the auction. Ex. 13. Such information bears directly upon Plaintiff's claims, including Plaintiff's contention that the Adjudication Sale resulted in the loss of substantial equity in the Property. This information is particularly important because the Property was sold as part of a bundled auction, creating uncertainty concerning the treatment and valuation of the Property within the transaction.

Furthermore, Plaintiff requested that the City admit that Plaintiff's screenshot of the CivicSource auction webpage was a "true, correct, and authentic depiction" of that webpage, and

the City declined to do so. Ex. 4 at 14-15. Under such circumstances, any screenshots depicting the webpage as it existed following the auction are directly relevant and should be produced.

During the Rule 37 conference, counsel for the City agreed that the City would determine whether such a screenshot existed and would produce it if available. Ex. 10. No supplemental production was ever made.

Accordingly, the Court should compel the City to produce any screenshots depicting the auction that resulted in the Adjudication Sale or, if no such screenshots exist, supplement its response to so state.

## H. The City Should Be Compelled to Supplement Its Responses to Requests for Production Nos. 24 and 25.

Requests for Production Nos. 24 and 25 sought documents reflecting revenues, payments, costs, and the flow of funds associated with the Tax Sale and Adjudication Sale. Ex. 3.

In response, the City referred Plaintiff to Bates-numbered documents CNO_000609-618 and CNO_000619-621. Ex. 4. However, the documents produced by the City contain substantial redactions, and none of them contain any requested information concerning the Tax Sale. Ex. 14. The City did not object to Requests for Production Nos. 24 and 25 and identified no basis for its redactions or withholding portions of the responsive documents.

The requested information is directly relevant to Plaintiff's claims. Plaintiff alleges that the Adjudication Sale resulted in the taking of substantial equity in the Property. The documents produced by the City purport to contain financial information concerning the Adjudication Sale, including the sale price and costs incurred in bringing it to sale. However, the Property was sold as part of a bundled transaction with 4811 Charlene Drive, and all financial information associated with the Charlene Drive property has been redacted or was not produced. This omission prevents

Plaintiff from evaluating how amounts associated with the bundled sale were allocated, how the sale price and other figures attributed to the Property were derived, and how the revenues, costs, and proceeds associated with the transaction were calculated.

In addition, although Requests for Production Nos. 24 and 25 sought documents concerning both the Tax Sale and the Adjudication Sale, the City did not identify or produce any documents reflecting revenues, payments, costs, or the flow of funds associated with the Tax Sale. As a result, Plaintiff remains unable to evaluate the financial aspects of the Tax Sale, including the costs allegedly incurred in connection therewith.

During the Rule 37 conference, counsel for the City agreed to review the redactions and either remove those associated with the bundled Charlene Drive property or identify documents containing the responsive information. Ex. 10. Despite this agreement, no supplemental production was ever made.

Accordingly, the Court should compel the City to disclose the financial information associated with the bundled Charlene Drive property by either un-redacting that information in Bates Nos. CNO_000609-618 or producing other responsive documents containing the information. The Court should further compel the City to produce responsive documents reflecting revenues, payments, costs, and the flow of funds associated with the Tax Sale.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant her Motion to Compel and order the City to supplement its responses to Interrogatory Nos. 1, 6, 7, 8, 9, 13, and 14, and to produce documents responsive to Requests for Production Nos. 19, 20, 21, 24, and 25, as set forth above. Plaintiff further requests an award of reasonable expenses pursuant to Federal Rule of Civil Procedure 37(a)(5).

Respectfully submitted,

**PRITCHETT LEGAL SERVICES, LLC**

/s/ Paul W. Pritchett
  **PAUL W. PRITCHETT (#36926)**
  2930 Banks Street
  New Orleans, Louisiana 70119
  Telephone: 602-402-6264
  Email: ppritchett@pritchettlegal.com
  ***Attorney for Plaintiff, Danielle Reado***

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on June 24, 2026, the foregoing was filed electronically using the CM/ECF system which will send notice of electronic filing to all counsel of record.

/s/ Paul W. Pritchett